KELSO-BURNETT CO., Plaintiff-Appellee, *v.* ZEUS DEVELOPMENT CORPORATION *et al.*, Defendants-Appellants.

Second District   No. 81-759

Opinion filed June 17, 1982.

Fischel and Kahn, of Chicago (David W. Inlander, Norman A. Shubert, and Terrie A. Rymer, of counsel), for appellants.

Brian J. Mulhern, of Gorham, Metge, Bowman and Hourigan, of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

This is an interlocutory appeal from an order of the trial court denying a motion to stay proceedings and to compel arbitration.

On October 17, 1978, plaintiff, Kelso-Burnett Co. (hereinafter "Kelso"), entered into a subcontract with the general contractor of the Briarwood Lakes project in Oak Brook, defendant Zeus Development Corporation (hereinafter "Zeus"), wherein Kelso agreed to perform electrical work for the project. The contract included an arbitration clause which provided that:

> "Unless otherwise agreed, all claims, disputes, and other matters in question arising out of, or relating to, this sub-contract

agreement or a default hereunder shall be arbitrated in mode and manner as set forth in Paragraph 7.10 of the latest edition of General Conditions of Contracts for Construction, AIA document A-201.11."

Notwithstanding that provision, when a dispute arose which resulted in Zeus' termination of the contract upon Kelso's default pursuant to another provision of the contract, Kelso filed a three-count suit on March 23, 1981; two counts to foreclose its mechanics' lien against Zeus and other defendants alleged to have an interest in the property, and a separate count for breach of contract against only Zeus. The other parties named in the lien counts were the record titleholder and its beneficiary, the mortgagee, and other subcontractors who had recorded claims against the property.

Kelso's complaint alleged, *inter alia*, that it performed electrical work pursuant to its contract with Zeus during the period October 1978 through July 1980; that invoices submitted to Zeus throughout much of 1979 and through June 1980 remain unpaid and that Zeus had not made any specific objections or disputed the correctness of any unit price or invoice for the work covered by the invoices; that Zeus had induced Kelso to submit certain final waivers of lien and waivers of lien to date on the express condition that it would immediately pay Kelso the full amounts due as represented by the waivers upon receipt of funds from its financing sources; and, further, that such payments were not made. Prior to filing of the complaint for foreclosure, and following unsuccessful attempts to resolve their differences, Zeus had notified Kelso that it was regarded as being in default of the contract. Kelso was allowed two days to cure the default and, upon Kelso's failure to cure, was notified by Zeus that the agreement was terminated. Kelso thereafter filed its complaint to foreclose.

Zeus responded to the complaint with a motion for stay of proceedings and to compel arbitration in accordance with the contract. Prior to the trial court's decision on that motion another defendant, J. P. Baron, Inc., the carpentry subcontractor of the project, was granted leave to intervene to seek adjudication of its lien claim arising out of the work it performed on the Briarwood Lakes project and was granted leave to file an amended counterclaim naming additional party defendants. Moser Lumber, Inc., Baron's material supplier, filed its answer in the form of a general denial; the other defendants either failed to appear or failed to answer by the time this interlocutory appeal was commenced. The circuit court of Du Page County denied Zeus' motion to certify the issue for appeal and ordered the defendants to answer or otherwise plead. Zeus timely filed its notice of interlocutory appeal.

The sole issue presented by this appeal is whether the trial court erred

in denying Zeus' motion to compel arbitration and to stay the lawsuit pending completion of arbitration.

■■ Despite the trial court's refusal to certify the question for appeal, this court nevertheless has jurisdiction to consider this interlocutory appeal pursuant to Supreme Court Rule 307(a) (73 Ill. 2d R. 307(a)), because the trial court's order denying the requested relief is analogous to the denial of an injunction. *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145.

Sections 2(a) and (d) of "An Act relating to arbitration * * *" (hereafter "Arbitration Act") (Ill. Rev. Stat. 1979, ch. 10, pars. 102(a) and 102(d)) provide that:

"(a) On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

* * *

(d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this Section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay."

Section 1 of the Arbitration Act referred to above provides as follows:

"Validity of arbitration agreement. A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract * * *." Ill. Rev. Stat. 1979, ch. 10, par. 101.

Zeus first argues that the sole issue before a court ruling on a motion to compel arbitration and to stay proceedings is whether there is an agreement to arbitrate, citing *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, *Farris v. Hedgepeth* (1978), 58 Ill. App. 3d 1040, and *Bunge Corp. v. Williams* (1977), 45 Ill. App. 3d 359. Zeus argues that because the contract between itself and Kelso clearly established they had an agreement to arbitrate, the statute dictates that the trial court "shall" order arbitration. Zeus asserts that once a valid arbitration agreement is established, a court does not have discretion in enforcing arbitration, citing *Iser Electric Co. v. Fossier Builders, Ltd.* (1980), 84 Ill. App. 3d 161. Further,

Zeus asserts, the arbitration agreement must be enforced even though both parties may be parties to a multiparty lawsuit involving the same questions of liability on the same work. *Galt v. Libbey-Owens-Ford Glass Co.* (7th Cir. 1967), 376 F.2d 711.

Kelso counters that the ruling in *J. F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, establishes that there are factual situations where enforcement of an arbitration agreement would only serve to violate and contravene the very policies under which arbitration is favored. Consequently, Kelso argues, the trial court is not mandated to order arbitration if there is a valid arbitration agreement, but may look to other factors and balance conflicting policies. Kelso contends that *Iser Electric Co. v. Fossier Builders, Ltd.* (1980), 84 Ill. App. 3d 161, impliedly recognized that the policy considerations favoring arbitration may have to yield to the policy considerations favoring joinder of claims and judicial economy where the claims of multiple parties are more intermingled and dependent than those involved in the *Iser* case. (84 Ill. App. 3d 161.) Kelso argues that a stay of proceedings pending arbitration between itself and Zeus would cause a substantial impairment of its mechanics' lien rights since the trial court could not stay the proceedings pending arbitration as to the other lien claimants, or even as between Kelso and Zeus as an owner of the property, rather than as the general contractor. Kelso contends if arbitration were ordered, it would be compelled to proceed in two forums at the same time—in the arbitration forum with Zeus as the general contractor and in the judicial forum with Zeus as the owner of the property. Kelso posits that when an arbitration agreement involves some, but not all, of the parties to multiparty litigation, the policies favoring arbitration must be balanced against the policies favoring joinder of claims, citing *J. F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, and two cases relied upon therein, *County of Jefferson v. Barton-Douglas Contractors, Inc.* (Iowa 1979), 282 N.W.2d 155, and *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.* (1976), 308 Minn. 20, 240 N.W.2d 551. Kelso contends that when arbitration would increase rather than decrease delay, complexity and cost it should not receive favored treatment. Kelso argues further that its allegations of Zeus' fraudulent inducement in obtaining waivers of lien in violation of section 21.01 of "An Act relating to contractors' and material men's liens, known as mechanics' liens" (Ill. Rev. Stat. 1979, ch. 82, par. 1 *et seq.*) (hereinafter "Mechanics' Liens Act"), and that its request for exemplary damages under the contract for that fraudulent conduct is not awardable in arbitration, citing generally *Garrity v. Lyle Stuart, Inc.* (1976), 40 N.Y.2d 354, 353 N.E.2d 793. Lastly, Kelso argues that Zeus should be estopped by its prior conduct from raising the arbitration provisions since it raised no question of claim or dispute during the period of

time between the beginning of Kelso's performance and the filing of its mechanics' lien.

Zeus replies that Kelso will not be prejudiced in its mechanics' lien by proceeding to arbitration first, since even if the arbitrators proceed to an award the making of the award does not destroy the lien nor prevent the plaintiff enforcing it for a larger amount than the amount of the award. (*Sorg v. Crandall* (1908), 233 Ill. 79, 99.) Zeus posits that when one party to an arbitration agreement raises that agreement as a bar to foreclosure proceedings, the court should stay proceedings but retain jurisdiction for the purpose of enforcing any award made by the arbitrators by foreclosure of the lien. This approach evidences an acknowledgement that the remedy provided by the Mechanics' Liens Act is merely cumulative of the contractor's common law remedies, which remedies may be pursued concurrently or successively until satisfaction of the claim is obtained through one of them. *West v. Flemming* (1857), 18 Ill. 248.

■■ Zeus points out Kelso's argument that the allegedly fraudulent inducement of Kelso to submit waivers of lien constitutes a cause of action in tort (and, therefore, a nonarbitrable issue) is incorrect. Section 21.01 of the Mechanics' Liens Act makes that fraudulent act punishable as a Class A misdemeanor enforceable by the State's Attorney. Zeus challenges Kelso's assertion that the only question to be resolved is *when* it would be paid, rather than *how much*, pointing to letters in the record from Zeus to Kelso indicating Kelso either omitted or improperly completed electrical work in various units throughout the project. Further, Zeus counters its conduct in no way would support a finding that it should be estopped from seeking arbitration since it filed its motion to compel arbitration and to stay the proceedings immediately after Kelso filed suit to foreclose. Until that time Zeus had no reason to seek specific enforcement of the arbitration agreement. Zeus points out that its failure to seek arbitration as to its dispute arising out of the same project with J. P. Baron, Inc., has no bearing on the instant cause since Baron and Zeus mutually agreed to waive their right to arbitration when they proceeded to litigate in the judicial forum. Zeus further contraverts Kelso's reliance on *J. F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, charging that Kelso has created the appearance of a multiplicity problem when there is none. Zeus points out there is really only one other claim besides that of Kelso's, that of J. P. Baron, Inc., the carpentry subcontractor and its material supplier, Moser Lumber, Inc. Further, the validity of Baron's and Kelso's claims is not dependent on the outcome of the other. In sum, Zeus' steadfast position is that once a valid arbitration agreement is established the court has no discretion in the matter; it must enforce arbitration.

In our opinion, Zeus' argument represents an accurate statement of

the law. There are two basic considerations in this case. First, under section 2(a) of the Arbitration Act, when a party seeks to compel arbitration and shows there is an agreement between the parties to arbitrate the issue, the court "shall" order arbitration. If the existence of the agreement is denied by the party opposing arbitration, the court must summarily proceed to determine whether or not an agreement exists. If an agreement does exist, arbitration shall be ordered. Second, under section 2(d) of the Arbitration Act, any action or proceeding involving an issue subject to arbitration shall be stayed if the arbitration has been ordered or applied for, or, if the issue is severable, the stay may be with respect to that arbitrable issue only. As to the first consideration, the court has no discretion; as to the second, it does.

■■ Although the use of the word "shall" in a statute is generally regarded as mandatory, it does not have a fixed, inflexible meaning and can, in fact, be construed as meaning "may" depending on legislative intent. (*People ex rel. Larson v. Rosewell* (1980), 88 Ill. App. 3d 272.) In this regard, the legislative intent is relatively clear. At common law, executory arbitration agreements generally were revocable at any time. (*County of Jefferson v. Barton-Douglas Contractors, Inc.* (Iowa 1979), 282 N.W.2d 155.) Section 1 of the Arbitration Act abrogates that common law rule by making written agreements to arbitrate existing or future controversies valid, enforceable and irrevocable except upon such grounds as exist for the revocation of any contract. By the same token, it is well established that parties are only bound to submit to arbitration those issues which by clear language they have agreed to arbitrate and that such agreements will not be extended by construction or implication. (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91.) The issue of whether a dispute is within the scope of an arbitration clause should be determined early and be controlled by judicial guidelines. *Farris v. Hedgepeth* (1978), 58 Ill. App. 3d 1040.

In resisting arbitration, one of Kelso's arguments is that there was actually no arbitrable dispute regarding any of the terms and conditions of the contract for the work performed. Kelso states the only dispute was *when* it was to be paid, since Zeus failed to pay the full amount represented by the allegedly fraudulently obtained waivers of lien which were conditionally submitted by Kelso upon Zeus' allegedly express promises to pay after it received payment from the project financers or purchasers. A review of the contract indicates, however, that the issue of *when* payment was to be made is arbitrable since it arises out of or relates to the contract. Paragraph 10 of the contract requires all requests for payment to be accompanied by waivers of lien, and paragraph 22 indicates these requests for payment were to be submitted "on or about the 27th day of each month for all work which has been properly performed by it as of the end of the preceding calendar month." Lines left open in paragraph 22

for the purpose of filling in information relating to *when* Zeus would make payments requested were purposefully filled in with dashes and, had they been filled in, would have been subject to the condition that "in no event shall such payment be due until contractor has received payment for the same from owner, and all unsound, improper or rejected work has been made good by the sub-contractor."

According to correspondence in the record, after Kelso recorded its lien, but prior to the filing of the foreclosure suit, Zeus requested completion and/or correction of the electrical work in various units. Another letter approximately 2½ months later notified Kelso it had 48 hours to cure the defects in its performance. A letter from Zeus two days later to Kelso terminated the contract.

Certainly, the matter of when Kelso was to be paid was a matter "arising out of or relating to the contract" since by the terms of the contract no payment was due Kelso until (1) the money had been received from the owner, and (2) all unsound, improper or rejected work had been corrected. Thus, the parties agreed to arbitrate the issue and the trial court erred by not specifically enforcing the agreement as contemplated and mandated by sections 1 and 2 of the Arbitration Act.

Once the issue has been determined to be arbitrable and arbitration duly ordered, the court's discretion comes into play. As noted in *Galt v. Libbey-Owens-Ford Glass Co.* (7th Cir. 1967), 376 F.2d 711, section 2(d) of the Arbitration Act shows that the legislature contemplated multiplicity of actions. Consequently, that section of the Arbitration Act has provided the court with discretion to choose one of two options: it *may* stay the *entire* proceeding pending arbitration, or, if the arbitrable issue is *severable*, the stay *may* be with respect thereto only. These two options are also open to a court in the exercise of its discretion under section 2(d) where the arbitrable and nonarbitrable issues, although severable, are also interrelated in terms of a complete resolution of the cause between the parties. *Farris v. Hedgepeth* (1978), 58 Ill. App. 3d 1040.

■■ The general rule, of course, is that absent an abuse of the court's discretion, its decision will not be reversed. Section 2(d) of the Arbitration Act requires that "such stay" (as to either the entire proceedings or only the arbitrable issue) shall be included in the order for arbitration. In the instant cause, the court failed to decide the predicate question—whether there was an agreement to arbitrate the issue, thus mandating arbitration—and proceeded instead directly to a determination that "* * * to compel arbitration and to stay these proceedings could very well result in a substantial impairment to the rights under the Mechanic [*sic*] Lien Act." Setting aside for the moment the court's initial error in failing to compel arbitration, we observe that the only question brought before a reviewing court in an interlocutory appeal is whether there was a sufficient showing

to sustain the order of the trial court granting or denying the relief sought. (See *S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 828; *Ording v. Springer* (1980), 88 Ill. App. 3d 243, 246.) Kelso strenuously argues there was a showing sufficient to sustain the court's order denying Zeus' motion to stay the foreclosure proceedings, and that *J. F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, is precedential in that regard.

In that case, the Viciks employed J. F. Incorporated to construct a house for them. The contract contained a general arbitration clause. A dispute arose between the parties, and while the owners and the general contractor were negotiating, four firms (some subcontractors and some materialmen) demanded foreclosure of their mechanics' liens, some of which demands had been made in original suits and others by way of counterclaim in pending suits. The general contractor demanded arbitration with the owners pursuant to their contract. The owners moved to consolidate the foreclosure suits and sought to enjoin arbitration. The owners' motions were initially granted and they were later reversed and the matter certified for appeal. On appeal, the owners took the same position that Kelso has here—that the court may refuse to compel arbitration that involves some but not all of the parties to multiparty litigation. The general contractor advanced essentially the same argument that Zeus does here—that arbitration may be enjoined only upon a showing there is no agreement to arbitrate.

The *Vicik* court considered the general rule established in *Iser Electric Co. v. Fossier Builders, Ltd.* (1980), 84 Ill. App. 3d 161, that agreements to arbitrate will be enforced despite pending multiparty litigation. The *Vicik* court considered, however, that an exception to the *Iser* rule was impliedly recognized therein when the issues and relationships among the parties to the multiparty litigation are closely intermingled and dependent. In such instances, the *Vicik* court determined that the policy favoring arbitration must be weighed against the policy favoring joinder of claims, and that where arbitration would increase rather than decrease delays, complexity, and costs it should not receive favored treatment. The *Vicik* court recognized the necessity for a showing that the issues and relationships of the multi-parties are closely intermingled and took particular note of the fact that neither of the parties to the arbitration agreement had caused the multiplicity problem.

The instant case is distinguishable in these last two regards. Kelso instituted the foreclosure action which by its nature required joinder of all interested parties as defendants. (Ill. Rev. Stat. 1979, ch. 82, par. 9.) Kelso itself thereby created what appears to be a multiplicity problem. Further, the record does not show that the issues and relationships are so intermingled and dependent as to negative the policy favoring arbitration. As noted by Zeus, the only other claim involved in the instant foreclosure suit

is that between Zeus and J. P. Baron, Inc., and its materialman, Moser Lumber, Inc., which same claim is also the subject of a prior-filed lawsuit. Baron's claim against Zeus is not subsidiary to Kelso's claim against Zeus. Additionally, the plaintiff's claim for foreclosure may be obviated by the outcome of the arbitration, thus furthering the policy which favors the resolution of disputes outside the judicial forum.

Without considering whether *J. F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, correctly decided that arbitration may be enjoined in the court's discretion for reasons other than the absence of an agreement to arbitrate, the circumstances presented in that case are not present here, and we find there was not a sufficient showing below which would sustain the court's order denying Zeus' motion to stay the foreclosure pending arbitration. We conclude, therefore, that the cause must be reversed and remanded with directions that the parties proceed to arbitration, and that the foreclosure suit be stayed pending the outcome thereof.

The judgment of the circuit court of Du Page County is reversed and the cause is remanded with directions.

Reversed and remanded with directions.

LINDBERG and REINHARD, JJ., concur.