FIRST CONDOMINIUM DEVELOPMENT COMPANY, Plaintiff-Appellee, *v.* APEX CONSTRUCTION & ENGINEERING CORPORATION, Defendant-Appellant, (Swann & Weiskopf, Ltd., *et al.*, Defendants).

First District (3rd Division)    No. 82—2793

Opinion filed June 29, 1984.

Robert G. Cook, Jr., of Chicago, for appellant.

Jenner & Block, of Chicago (Richard J. Gray and Darryl M. Bradford, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

This is an interlocutory appeal from the granting of First Condominium Development Company's (First Condo) motion to stay arbitration and the denial of defendant Apex Construction & Engineering Corporation's (Apex) motion to stay litigation in this cause.

In January 1979, First Condo began a condominium conversion project at the University Apartments on East 55th Street in Chicago. First Condo contracted with Apex for the construction of a pool, bathhouse and health club, including general contracting, plumbing, heating, ventilation, air conditioning and electrical work, "except work shown by others on plans or specifications." The work was to be completed by May 30, 1979. Construction was actually completed on or about January 19, 1981. The contract documents which were prepared by First Condo incorporated the latest edition of the American Institute of Architects (AIA) Documents A201, General Conditions of Contract for Construction, which included a general arbitration clause at section 7.9.1.

On June 16, 1982, First Condo filed its first amended complaint

against Apex and six codefendants. Count 1 was against Swann & Weiskopf, Ltd., James A. Swann and Malcolm S. Weiskopf (architect) based on contract. Counts 2 and 3 alleged wilful and wanton misconduct and misrepresentation by the architect. Count 4 against Apex was based on the breach of contract between Apex and First Condo. Count 5 against Apex alleged wilful and wanton misconduct. Count 6 for breach of contract was brought against the pool contractor, Paddock of the Midwest, Inc. (Paddock). Count 7 charged Paddock with wilful and wanton misconduct. Count 8 charged the engineer, Jerome M. Klipp & Associates (Klipp) with breach of contract. Paddock subsequently filed a third-party complaint against Trumbull Excavating Company on a subcontract. First Condo sought compensatory and punitive damages against the architect, Apex, and Paddock and compensatory damages against Klipp.

Essentially, First Condo's complaint alleged that at different times during the construction of the pool, bathhouse and indoor health club, unidentified individuals under the supervision of the architect and/or Apex and/or Paddock severed an electrical utility line (September 25, 1979), a gas utility line (October 8, 1979) and a telephone cable and conduit system (June 14, 1980). Due to these mishaps it was necessary to relocate and re-excavate the pool on at least one occasion, resulting in money damages to First Condo, including construction cost overruns, the expense of obtaining zoning variances, damage to personal property, repair of utility lines, the cost of compensating the condominium association for the late opening of the pool and health club, and damage to First Condo's business reputation and good will as a condominium developer, resulting in unsold condominium units.

On March 26, 1981, Apex filed with the American Arbitration Association a demand for arbitration for the balance due under the contract, plus extras ordered and furnished, of $108,629.41. On March 27, 1981, Apex filed a motion to stay proceedings against it on First Condo's complaint in the trial court. On July 30, 1981, First Condo filed a motion to stay arbitration, denying the existence of a binding arbitration agreement between the parties. Both parties filed memoranda of law in support of their positions. The trial court found that the contract documents between First Condo and Apex included a valid arbitration clause. The court stated that the issue was whether the agreement should be enforced despite the pending multiparty litigation and third-party claims. Both parties again filed memoranda. On October 20, 1982, the trial court granted First Condo's motion to stay arbitration and denied Apex's motion to stay the law proceedings. Apex appeals.

The issue before this court is whether the trial court erred in enjoining arbitration once it had determined that an enforceable arbitration agreement existed between the parties.

Sections 2(a) and (d) of the Uniform Arbitration Act (Arbitration Act) (Ill. Rev. Stat. 1979, ch. 10, pars. 102(a) and (d)) provide:

"(a) On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise the application shall be denied.

\* \* \*

(d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this Section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay."

Section 1 of the Arbitration Act referred to above provides as follows in pertinent part:

"Validity of arbitration agreement. A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract \* \* \*." Ill. Rev. Stat. 1979, ch. 10, par. 101.

It is a well-established principle that arbitration is favored by the State, Federal and common law. (*Brennan v. Kenwick* (1981), 97 Ill. App. 3d 1040, 425 N.E.2d 439; *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 215 N.E.2d 25, *appeal denied* (1966), 33 Ill. 2d 628.) The object of arbitration is to foster the final disposition of disputes in an easier, quicker and more economical manner than by litigation. Once a contract containing a valid arbitration clause has been executed, the parties are irrevocably committed to arbitrate all disputes arising under the agreement. *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 215 N.E.2d 25.

In *Del Bianco* a school district brought suit against the general contractor, the architect and the bonding company regarding the construction of an elementary school. The architect, Del Bianco, filed a motion to stay the proceedings and compel arbitration, which the trial court denied. In reversing the trial court order and ordering the par-

ties to arbitrate, the appellate court stated that the sole issue under the Arbitration Act in a preliminary hearing to stay or compel arbitration is whether there is an agreement to arbitrate; and that the provisions of the Act militate against the argument that a party to an arbitration agreement may choose between a judicial or arbitration forum. 68 Ill. App. 2d 145, 156.

In commenting favorably upon the *Del Bianco* decision, the United States Court of Appeals for the Seventh Circuit stated in *Galt v. Libbey-Owens-Ford Glass Co.* (7th Cir. 1967), 376 F.2d 711, that section 2(d) of the Arbitration Act shows that the Illinois legislature contemplated arguments involving multiparty litigation and circuity of action and that consequently section 2(d) provides a court with two options: it may stay the entire proceeding pending arbitration, or, if the issue is severable, the stay may be with respect to that issue only.

*Iser Electric Co. v. Fossier Builders, Ltd.* (1980), 84 Ill. App. 3d 161, 405 N.E.2d 439, was the first Illinois case to consider directly the question of whether a court may refuse to compel arbitration involving some but not all the parties to multiparty litigation. The court stated the general rule that agreements to arbitrate will be enforced despite the existence of claims by third parties or of pending multiparty litigation. In *Iser* the defendant-counterplaintiff, Fossier, had contracted with defendants-counterdefendants, the Carriers, to build a home. The contract contained a general arbitration clause which provided that " 'all claims, disputes and other matters in question between the Contractor (Fossier) and the Owner (Carriers) arising out of, or relating to, the Contract, Documents or the breach thereof \*\*\*, shall be decided by arbitration \*\*\*.' " (84 Ill. App. 3d 161, 162.) After the Carriers terminated their contract with Fossier, plaintiff Iser, an electrical subcontractor, originally hired by Fossier and later by the Carriers, sued both Fossier and the Carriers for the balance due for work performed on the premises, seeking the entire amount from each party. In response to Iser's suit, Fossier filed a counterclaim against the Carriers alleging that they had breached the contract by wrongfully terminating it. The Carriers filed a motion pursuant to section 2(b) of the Arbitration Act for an order severing the counterclaim or staying its prosecution pending arbitration, requiring Fossier to arbitrate its claim against the Carriers. The trial court denied the motion. The Carriers appealed.

In its argument on appeal Fossier relied principally upon a Minnesota case, *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.* (1976), 308 Minn. 20, 240 N.W.2d 551, where a subcontractor had brought an action for damages against the owner and general contrac-

tor and the owner had brought counterclaims against its architects and engineers for indemnity and damages. Only the contract between the owner and architect contained an arbitration clause. The Minnesota court refused to compel arbitration, holding, "[w]here arbitration would increase rather than decrease delay, complexity, and costs, it should not receive favored treatment." 308 Minn. 20, 24, 240 N.W.2d 551, 553.

In declining to adopt the reasoning of the Minnesota case, the court in *Iser* ordered Fossier to proceed to arbitration with the Carriers since their dispute was based on a separate contract involving different rights and obligations than those relied upon by Iser. The court pointed out that a decision by the arbitrator resolving Fossier's claim against the Carriers would not bind Iser in its claim against the parties. Further, the court noted that in enacting the Arbitration Act the legislature determined that it was no longer equitable to enjoin arbitration to prevent multiplicity of actions. (84 Ill. App. 3d 161, 166.) Thus, the cause was reversed and remanded with directions that the counterclaim be severed and that the parties proceed to arbitration.

In the case at bar, the trial court determined that arbitration was not required in reliance upon *J.F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, 426 N.E.2d 257, a case from the fifth district of this court which recognized an exception to the rule stated in *Iser*. The defendants, the Viciks, had contracted with a general contractor to construct a house. The contract contained an arbitration clause. A dispute arose between the general contractor and the Viciks, and while the parties were negotiating a settlement, four subcontractors and/or materialmen demanded foreclosure of their mechanics' liens against the owners and the general contractor. The general contractor demanded arbitration with the Viciks under the provisions of its contract with them. The Viciks petitioned the trial court to enjoin arbitration and to consolidate the foreclosure suits. The trial court denied the petition for injunction.

■ On appeal, the appellate court reached a decision similar to that of the *Prestressed Concrete* case. The court stated that while *Iser* recognized the general rule that arbitration agreements will be enforced despite pending multiparty litigation, the court in *Iser* implicitly recognized that the result may be different where the claims of multiple parties are more "intermingled and dependent." The policy favoring arbitration should be weighed against the policy favoring joinder of claims. If arbitration of only a portion of the disputes would be less efficient in terms of time, expense and complexity of issues, it becomes counterproductive and should not receive favored treatment. (99 Ill. App. 3d 815, 820.) After considering all of the facts in *Vicik*, the court

determined that the parties were not required to arbitrate their dispute.

First Condo urges this court to follow the reasoning of *Vicik*. Subsequent to the trial court's decision in this matter, *Kelso-Burnett Co. v. Zeus Development Corp.* (1982), 107 Ill. App. 3d 34, 437 N.E.2d 26, was published, and the court discussed the enforceability of arbitration clauses in construction contracts. Kelso-Burnett (Kelso) entered into a subcontract with Zeus Development Corporation (Zeus), wherein Kelso agreed to perform electrical work for a project. Their contract contained an arbitration clause. A dispute arose in which Zeus terminated the contract upon Kelso's default. Kelso filed a three-count complaint against Zeus and other defendants, including the record titleholder and its beneficiary, the mortgagee, and other subcontractors who had recorded claims against the property. Zeus filed a motion to stay the proceedings and to compel arbitration in accordance with the contract. The trial court denied Zeus' motion. Zeus appealed.

On appeal, the appellate court held that once a valid arbitration agreement has been established, the trial court has no discretion but shall order arbitration. (*Kelso-Burnett Co. v. Zeus Development Corp.* (1982), 107 Ill. App. 3d 34, 437 N.E.2d 26.) Any action or proceeding involving an issue subject to arbitration shall be stayed if the arbitration has been ordered, or if the issue is severable the stay may be with respect to the arbitrable issue only. Thus, the parties were ordered to proceed to arbitration, and the legal proceedings were stayed pending the outcome thereof.

In our opinion the court in *Kelso-Burnett* presented an accurate analysis of Illinois law as it has developed since the adoption of the Arbitration Act.

Further, as the court in *Kelso-Burnett* noted, even if the court in *Vicik* was correct in deciding that arbitration may be enjoined in certain situations involving multiparty litigation, the facts of the *Vicik* decision are distinguishable from those in *Kelso-Burnett*. In *Vicik* neither of the parties to the arbitration agreement had initiated the litigation, and the court in *Vicik* specifically recognized the necessity of a showing that the issues and relationships of the parties were closely intermingled and interdependent.

In the instant matter, First Condo, the party whose documents incorporated the arbitration agreement, initiated the litigation, thereby creating the multiplicity problem. Further, our review of the record indicates that the claims against the codefendants are not so hopelessly intertwined as First Condo suggests. As in the *Iser* case, First Condo's rights against each of the codefendants will be deter-

mined by separate contracts. We note that the only question properly before a reviewing court in an interlocutory appeal is whether there was a sufficient showing to sustain the order of the trial court granting or denying the relief sought. (See *Ording v. Springer* (1980), 88 Ill. App. 3d 243, 410 N.E.2d 428.) We cannot say that such a showing was made in the instant matter. The court erred in granting First Condo's motion to stay arbitration.

■ Finally, First Condo argues that the trial court erred in finding that an arbitration agreement existed between First Condo and Apex. However, although it is well established that parties are only bound to submit to arbitration those issues which by clear language they have agreed to arbitrate, and that such agreements will not be extended by construction or implication (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149), the contract documents between First Condo and Apex specifically incorporated the latest edition of the American Institute of Architects (AIA) Documents A201, General Conditions for Construction, which included the following in pertinent part:

"Section 7.9.1

All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, \*\*\* shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association \*\*\*."

We find that the trial court was correct in finding that the contract documents between First Condo and Apex included a valid arbitration clause which included the issue of the balance due Apex under the contract. (See *Bunge Corp. v. Williams* (1977), 45 Ill. App. 3d 359, 359 N.E.2d 844.) We do not see any merit in First Condo's assertion that Apex's demand for arbitration was premature. We conclude that this cause must be reversed and remanded with directions that the parties in this appeal, First Condominium Development Company and Apex Construction and Engineering Corporation, proceed to arbitration and that First Condo's suit against Apex be stayed pending the outcome thereof.

Reversed and remanded with directions.

RIZZI, P.J., and McNAMARA, J., concur.