(text box: 1) NO. 5-01-0885

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

RUTH REED, DAN KEATING, )  Appeal from the

DENNIS DeSPAIN, )  Circuit Court of

TERRY DeSPAIN, and )  Madison County.

CHARLES MANSFIELD SMITH III, )

)

     Plaintiffs-Appellees, )

)

)  No. 98-LM-652

)

DOCTOR'S ASSOCIATES, INC., )

FREDERICK DeLUCA, and )

PETER H. BUCK, )  Honorable

)  Clarence W. Harrison II,

     Defendants-Appellants. )  Judge, presiding.

___________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

Doctor's Associates, Inc., Frederick DeLuca, and Peter H. Buck (defendants) appeal an order of the circuit court of Madison County that denied, in part, defendants' motion to stay this case in favor of arbitration.  On appeal, defendants raise the issue of whether the trial court erred in denying their motion to stay in regard to the plaintiffs' claims of abuse of process and malicious prosecution while at the same time finding that a prior order of a Connecticut state court mandated staying the plaintiffs' other claims. 

FACTS

Ruth Reed, Dan Keating, Dennis DeSpain, Terry DeSpain, and Charles Mansfield Smith III (plaintiffs) were franchisees of "Subway" sandwich shops.  Defendant Doctor's Associates, Inc. (DAI), was the national franchisor of Subway, and defendants DeLuca and Buck were the founders and co-owners of DAI.  The franchise agreements contained arbitration clauses that read in part:

"Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut[,] and judgement [
sic
] upon an award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.  The commencement of arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of legal action by either party."

In 1998, plaintiffs, along with numerous other franchisees also named as plaintiffs, filed the original class action complaint in this case in Madison County under the caption Wolf v. Doctor's Associates, Inc., No. 98-LM-652.  Count I of the original complaint alleged a breach of contract, and count II requested that the arbitration clause in the franchise agreement be declared unenforceable. 

At the time of the filing of that complaint, a class action lawsuit captioned Hargett v. Doctor's Associates, Inc., No. 98-L-410, was filed in Madison County.  DAI then filed a motion in the United States District Court for the District of Connecticut, and in the motion DAI sought to enjoin the Illinois actions on the grounds that a November 25, 1996, federal court order in 
Doctor's Associates, Inc. v. Hollingsworth
, 949 F. Supp. 77 (D. Conn. 1996), compelled many of the named class representatives in the Illinois actions to enter into arbitration.  Subsequently, the 
Hollingsworth
 plaintiffs withdrew from being class representatives in No. 98-L-410, but according to defendants, they remained as unnamed members of the plaintiff class in No. 98-LM-652.

On July 29, 1998, the Connecticut district court enjoined the two Illinois class actions in their entirety.  On appeal, the United States Court of Appeals for the Second Circuit vacated the challenged portion of the July 29, 1998, order as being overly broad and being directed against parties not subject to the jurisdiction of the Connecticut district court action.  
Doctor's Associates, Inc. v. Reinert & Duree, P.C.
, 191 F.3d 297 (2d Cir. 1999).   

Subsequently, on October 8, 1999, plaintiffs filed a first amended complaint in No. 98-LM-652.  The first amended complaint contained additional counts that stated claims for malicious prosecution and abuse of process for requesting the injunctions from the district court of Connecticut.

After the Second Circuit decision in 
Reinert & Duree, P.C.
 was handed down, DAI filed another series of petitions in the district court of Connecticut.  DAI sought to enjoin No. 98-LM-652 in its entirety.  
Doctor's Associates, Inc. v. Qasim
, No. 99-9434 (August 24, 2000) (unpublished summary order).  DAI claimed that No. 98-LM-652 should be barred in its entirety, despite the district court lacking jurisdiction over plaintiffs in this case, because No. 98-LM-652 was still being pled as a class action and the remaining plaintiffs would be able to prosecute claims on behalf of the franchisees compelled to arbitrate.  The district court entered an injunction barring all parties, including plaintiffs in this case, from prosecuting No. 98-LM-652.  On appeal, the Second Circuit affirmed the orders compelling other franchisees to arbitrate, but it vacated the injunction against plaintiffs in this case.  In its decision, dated August 24, 2000, the court stated:  

"In the instant case,  however–as in 
Reinert & Duree
–the District Court's injunction bars the non[]parties 'from litigating actions in their own names and on behalf of other nonparties, even though such actions would not benefit the parties,' [citation] since they now expressly have been excluded from the class definitions in the Illinois actions, whether as named or unnamed plaintiffs.  As such, the injunction exceeded the District Court's allowable discretion, under both Rule 65 and the Anti- Injunction Act, substantially for the reasons set forth in 
Reinert & Duree
."  
Qasim
, summary order at 8.

After the Second Circuit issued its decision in 
Qasim
, plaintiffs filed their second amended complaint in this action, which includes a second malicious-prosecution count and a second abuse-of-process count based on alleged actions taken by defendants in seeking the injunction in 
Qasim
.  Plaintiffs also filed a notice of partial dismissal, which effectively changed the caption of the case to the present caption.  The second amended complaint contained six counts:  count I (class action for the violation of the franchise agreement), count II (declaratory judgment on the arbitration clause), count III (malicious prosecution relating to the July 29, 1998, injunction), count IV (abuse of process relating to the July 29, 1998, injunction), count V (malicious prosecution relating to the 
Qasim
 injunction), and count VI (abuse of process relating to the 
Qasim
 injunction).

In September 2000 DAI made arbitration demands upon plaintiffs and filed, in Connecticut state court, actions demanding arbitration.  On November 13, 2000, plaintiffs filed, also in the state court of Connecticut, a motion to stay.  Plaintiffs requested that the Connecticut state court stay the applications for arbitration until the claims for declaratory judgment filed in Illinois were resolved.  The Connecticut state court apparently denied the motion in a memorandum of decision dated April 25, 2001, which is absent from our record.  On May 21, 2001, in separate and identical orders regarding each plaintiff, the Connecticut state court entered a memorandum of decision granting the applications for an order to proceed with arbitration. 

On September 7, 2001, defendants filed a motion for a stay in the circuit court of Madison County.  Defendants contended that a stay was necessitated by the order of the Connecticut state court of May 21, 2001.  On October 19, 2001, the trial court granted the motion to stay as to counts I and II of the second amended complaint but denied it as to counts III through VI.  Defendants appeal this order.

ANALYSIS

We note at the outset that Illinois public policy favors arbitration.  See 
City of Centralia v. Natkin & Co.
, 257 Ill. App. 3d 993, 996, 630 N.E.2d 458, 460 (1994).  Illinois public policy also favors consistency with other states in the enforcement and interpretation of arbitration agreements.  See 
Bass v. SMG, Inc.
, 328 Ill. App. 3d 492, 765 N.E.2d 1079 (2002).  Illinois has reflected these policy concerns in its adoption of the Uniform Arbitration Act (Uniform Act) (710 ILCS 5/1 
et seq.
 (West 1998)).  As was recently stated: 

"The Uniform Act governs the interpretation and enforcement of arbitration agreements.  As an initial interpretive matter, we note that our supreme court has held that judicial opinions from other jurisdictions interpreting such acts are given greater-than-usual deference since the general purpose of a uniform act is to make consistent the laws of the states that have enacted it.  [Citation.]  Similarly, because the Uniform Act and the Federal Arbitration Act (9 U.S.C. §1 
et seq
. (1976)) share a common origin, courts interpreting the former look for guidance to federal court decisions interpreting similar provisions in the federal act.  [Citation.]

In considering appellate review of motions to compel arbitration, our supreme court has concluded that '[t]he [Uniform] Act embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes.' "  
Bass
, 328 Ill. App. 3d at 497, 765 N.E.2d at 1084-85 (quoting 
Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr
, 124 Ill. 2d 435, 443, 530 N.E.2d 439, 443 (1988)).  

Defendants contend that the order of the state court of Connecticut mandates that all of plaintiffs' claims be arbitrated.  Aside from our policy concerns underlying the Uniform Act, we are obligated to give a final judgment of another state the finality it has in the state where it was rendered.  The full faith and credit clause of the United States Constitution requires each state to give full faith and credit to the judicial proceedings of every other state.  U.S. Const., art. IV, §1; 
Hamwi v. Zollar
, 299 Ill. App. 3d 1088, 1094, 702 N.E.2d 593, 597 (1998).  

Plaintiffs argue that the Connecticut state court did not make any findings regarding the claims made in counts III through VI of plaintiffs' complaint.  Plaintiffs contend that the Connecticut state court did not rule on issues of arbitrability, including the scope of the arbitration clause.  According to plaintiffs, the Connecticut state court merely issued a pass-through order, which left open the initial determination of arbitrability.  Defendants responded in their reply brief:  "The Connecticut State court judgment clearly did not leave the issue of arbitrability to the arbitrator.  The Connecticut State court judgment granted DAI's Applications to Proceed with Arbitration.  Moreover, the judgment did not distinguish between the 'contract' and 'tort' counts[] and ordered Plaintiffs to arbitrate 
all
 of their claims with DAI."  (Emphasis in original.)    

A review of the Connecticut state court orders to proceed with arbitration reveals that the court did not state that all claims were to be arbitrated.  The identical orders read in full: 

"The court having heard the arguments of the parties on May 21, 2001[,] hereby orders that the Application for Order to Proceed with Arbitration (#101) is hereby granted.  The *** Motion to Stay (#105), dated November 13, 2000[,] is hereby denied.  The denial of the Motion for Stay, originally entered on April 25, 2001, is hereby reaffirmed.

The court makes no findings on the merits of any factual issues regarding the dispute between the parties.  The court's findings, to date, are limited to the memorandum of decision regarding the *** motion for stay, which was denied on April 25, 2001, and the orders entered on this date."

By granting the applications to proceed with arbitration, the court made no finding regarding arbitrability.  In our record, the application for an order to proceed with arbitration makes no reference to the action in Madison County, and no reference is made to the issues in counts III through VI.  Even if the application had clearly requested a determination regarding the issues in counts III through VI, the order itself is silent.  Nowhere in the order does the court mandate that all such issues are to be arbitrated; the order is silent on this question.

In our record, there is no indication of any procedure mandated by the Connecticut state court for determining what should be arbitrated and who should make that determination.  Instead, the Connecticut court leaves the initial determination of arbitrability open and does not discuss the effect of a determination by the arbitrators regarding arbitrability. 

An order leaving open the issue of what is arbitrable does not have the effect of 
res judicata
 on the issue of arbitrability.  The answer to the issue presented to this court would be directly established by precedent if the underlying order had been issued by an Illinois court.  See 
Salsitz v. Kreiss
, 198 Ill. 2d 1, 10, 761 N.E.2d 724, 729 (2001).  Even if the court had found that the parties had agreed that all issues regarding arbitrability were to be determined by the arbitrator, 
Salsitz
 establishes that no 
res judicata
 effect should be given to the order.  In 
Salsitz
, the municipal division of the Cook County circuit court, on the motion of the defendants, ordered the parties to arbitrate and directed the arbitrator to determine issues of arbitrability.  The plaintiffs nonsuited the action and filed complaints for declaratory and injunctive relief in the chancery division.  The chancery division denied the plaintiffs' motion for a temporary restraining order, and arbitration proceeded.  The arbitrator determined that the defendants' claims were arbitrable, and the arbitrator entered an award. Defendants filed a motion to dismiss the complaints that the plaintiffs had filed in the  chancery division.  The chancery division dismissed the complaints, finding that the arbitrator was entitled to deference on issues of arbitrability, and it affirmed the arbitrator's award of actual damages.  The appellate court affirmed (
Salsitz v. Kreiss
, 311 Ill. App. 3d 590, 724 N.E.2d 1019 (2000)), but our supreme court reversed.

The court rejected the defendants' contention that the doctrine of 
res judicata
 barred the relitigation of the issue of arbitrability.  
Salsitz
, 198 Ill. 2d at 10-11, 761 N.E.2d at 729.  The defendants contended that the municipal division had determined the issue of arbitrability by submitting it to the arbitrator.  The court noted that under the Uniform Act, when parties enter into broad agreements to arbitrate, it is appropriate to submit issues of arbitrability to an arbitrator for an initial determination.  The court noted, however, that when an arbitrator makes a determination regarding arbitrability, the decision is subject to an  " 'ultimate determination of arbitrability by the court.' "  
Salsitz
, 198 Ill. 2d at 10, 761 N.E.2d at 729 (quoting 
Barr
, 124 Ill. 2d at 451, 530 N.E.2d at 446).  Thus, the municipal division court order had no 
res judicata
 effect on issues of arbitrability.

The court gave further insight into the dangers of leaving arbitrability issues to the arbitrators, when it reflected on the deference that should be given to initial determinations regarding arbitrability in cases where the court does not make a finding that the parties clearly agreed to arbitrate arbitrability.  The court stated: 

"It follows that, where the arbitrator decides the question of arbitrability in the first instance, the circuit court must review the arbitrator's decision 
de novo
. [
Barr
], 124 Ill. 2d at 451[, 530 N.E.2d at 446]; 
Amgen, Inc. v. Ortho Pharmaceutical Corp.
, 303 Ill. App. 3d 370, 378[, 708 N.E.2d 385, 390] (1999)[;] [s]ee also 
Woonsocket Teachers' Guild, Local 951 v. Woonsocket School Committee
, 770 A.2d 834, 837 (R.I. 2001); 
DMS Properties-First, Inc. v. P.W. Scott Associates, Inc.
, 748 A.2d 389, 392 (Del. 2000) (and cases cited therein); 
Ex parte Stamey v. Easter
, 776 So. 2d 85, 88 (Ala. 2000); 
In re Arbitration Between: Independent School District No. 88, New Ulm, Minnesota v. School Service Employees Union Local 284
, 503 N.W.2d 104, 105 (Minn. 1993); 
Grad v. Wetherholt Galleries
, 660 A.2d 903, 908 (D.C. App. 1995); 
Oil, Chemical & Atomic Workers International Union v. Lone Star Producing Co.
, 332 S.W.2d 151, 154 (Tex. Civ. App. 1959).  Were it not so, a party would be bound by the arbitration of disputes he has not agreed to arbitrate and would be left with only a court's deferential review of the arbitrator's decision on the question of arbitrability.  
First Options of Chicago, Inc. v. Kaplan
, 514 U.S. 938, 942, 131 L. Ed. 2d 985, 992, 115 S. Ct. 1920, 1923 (1995)."  
Salsitz
, 198 Ill. 2d at 13-14, 761 N.E.2d at 731.

As in Illinois, under Connecticut law a court may review the issue of arbitrability when it has been submitted to an arbitrator.  The Connecticut Supreme Court has outlined this procedure: 

"We have held that there are two procedural routes by which a party may preserve the issue of the arbitrability of a particular dispute for judicial determination.  First, a party may refuse to submit to arbitration at the outset and instead compel a judicial determination of the issue of arbitrability.  
Schwarzschild v. Martin
, 191 Conn. 316, 323, 464 A.2d 774[, 778] (1983); 
New Britain v. State Board of Mediation & Arbitration
, 178 Conn. 557, 560-61, 424 A.2d 263[, 264] (1979). 'Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute ... .  In such cases a court, on a motion to vacate, may properly entertain a challenge to an award alleging disregard of the limits in the parties' agreement with respect to arbitration.'  (Citations omitted.)  
New Britain v. State Board of Mediation & Arbitration
, [178 Conn. at 560, 424 A.2d at 265]; see 
Bridgeport v. Bridgeport Police Local 1159
, 183 Conn. 102, 105, 438 A.2d 1171[, 1174] (1981); 
Conte v. Norwalk
, 173 Conn. 77, 80, 376 A.2d 412[, 413] (1977). 'Thus, the mere conformity of the submission to the award does not foreclose the court from reviewing whether that award is in violation of the parties agreement.' (Internal quotation marks omitted.)  
Scharzschild v. Martin
, [191 Conn. at] 323, 464 A.2d [at 778]."  
White v. Kampner
, 229 Conn. 465, 476, 641 A.2d 1381, 1386 (1994).

Given that plaintiffs objected to the submission to arbitration and that the Connecticut court was silent as to the role of the arbitrator in determining arbitrability, under Connecticut law, the doctrine of 
res judicata
 did not bar the Illinois trial court's order.  See also 
American Re-Insurance Co. v. MGIC Investment Corp.
, 73 Ill. App. 3d 316, 322, 391 N.E.2d 532, 537 (1979) (full faith and credit did not require the stay of Illinois proceedings where a New York state court granted a motion to compel arbitration but declined to enjoin Illinois proceedings). 

Because the doctrine of 
res judicata
 did not bar the trial court from issuing an order regarding arbitrability, the remaining question is whether the trial court acted within its discretion in finding that counts III through VI could proceed separately from the arbitration.  There is widespread agreement that the label of "tort" or "contract" is not dispositive of the question of arbitrability.  
Bass
, 328 Ill. App. 3d at 499, 765 N.E.2d at 1086.  Defendants correctly point out that the coverage of a claim does not depend on the label of "tort" or "contract," but on the relationship of the subject matter of the arbitration clause to the claim presented.  See 
In re Oil Spill by Amoco Cadiz
, 659 F.2d 789 (7th Cir. 1981); 
Pierson v. Dean, Witter, Reynolds, Inc.
, 742 F.2d 334 (7th Cir. 1984); 
Kroll v. Doctor's Associates, Inc.
, 3 F.3d 1167 (7th Cir. 1993); 
Howells v. Hoffman
, 209 Ill. App. 3d 1004, 568 N.E.2d 934 (1991); 
Jacob v. C & M Video, Inc.
, 248 Ill. App. 3d 654, 618 N.E.2d 1267 (1993).  

An agreement to arbitrate is a matter of contract, and the parties are bound to arbitrate only those issues they have agreed to arbitrate by the clear language of the contract.  
Bass
, 328 Ill. App. 3d at 498, 765 N.E.2d at 1085-86; 
Salsitz
, 198 Ill. 2d at 13, 761 N.E.2d at 730.  The reading of an agreement to arbitrate will not be extended by construction or implication.  
Clark v. Country Mutual Insurance Co.
, 131 Ill. App. 3d 633, 637, 476 N.E.2d 4, 6 (1985).  A party may not be forced to arbitrate any dispute that it has not agreed to arbitrate.  
Martin v. City of O'Fallon
, 283 Ill. App. 3d 830, 834, 670 N.E.2d 1238, 1242 (1996).

Defendants attempt to draw analogies to cases where fraud or torts that are closely related to the contractual relation formed between the parties are submitted to arbitration.  See 
In re Oil Spill by Amoco Cadiz
, 659 F.2d 789 (7th Cir. 1981) (claims of misrepresentation and the breach of duty); 
Pierson v. Dean, Witter, Reynolds, Inc.
, 742 F.2d 334 (7th Cir. 1984) (fraud, negligence, and gross negligence); 
Kroll v. Doctor's Associates, Inc.
, 3 F.3d 1167 (7th Cir. 1993) (fraudulent misrepresentation); 
Howells v. Hoffman
, 209 Ill. App. 3d 1004, 568 N.E.2d 934 (1991) (fraud and securities law violations); 
Jacob v. C & M Video, Inc.
, 248 Ill. App. 3d 654, 618 N.E.2d 1267 (1993) (fraud and violations of the Franchise Disclosure Act of 1987 (815 ILCS 705/1 
et seq.
 (West 1992))).  Unlike the cases cited by defendants, the claims of abuse of process and malicious prosecution alleged by plaintiffs occurred separately and after the parties' interaction under the franchise agreement.  See 
William J. Templeman Co. v. Liberty Mutual Insurance Co.
, 316 Ill. App. 3d 379, 383, 735 N.E.2d 669, 674 (2000) (discussing how claims of malicious prosecution and abuse of process are separate from the underlying actions).  Rather than arising out of the contractual relationship between the parties, the claims of malicious prosecution and abuse of process are centered on the subsequent interaction of the parties in the litigation process.  If the interpretation sought by defendants is given effect, the plain meaning of the language in the contract would have to be set aside for an interpretation that any possible dispute between the parties, whether or not related to the contractual relationship but occurring after the contract was made, would have to be arbitrated.  Indeed, it would be rather odd to force  plaintiffs to arbitrate claims of the misuse of the court system.  

If it is apparent that an issue sought to be arbitrated is outside the ambit of the arbitration clause, the court should decide against arbitrability.  
Barr
, 124 Ill. 2d at 445, 530 N.E.2d at 443.  The trial court correctly did so here.  

Absent an abuse of discretion, a trial court's decision to grant or deny a motion to stay will not be overturned on appeal.  
Kelso-Burnett Co. v. Zeus Development Corp.
, 107 Ill. App. 3d 34, 41, 437 N.E.2d 26, 31 (1982); see 
May v. SmithKline Beecham Clinical Laboratories, Inc.
, 304 Ill. App. 3d 242, 246, 710 N.E.2d 460, 463 (1999).  The party seeking the stay must justify it by clear and convincing circumstances outweighing its potential harm to the opposing party.  
May
, 304 Ill. App. 3d at 246, 710 N.E.2d at 464.  Under the Uniform Act, the trial court has the discretion to sever issues and stay only those claims that are to proceed to arbitration.  710 ILCS 5/2 (West 2000); 
Kelso-Burnett Co.
, 107 Ill. App. 3d at 41, 437 N.E.2d at 31.  Allowing plaintiffs' claims in counts III through VI to proceed would not impede the arbitration of other issues.  
Cf. Board of Managers of Courtyards at Woodlands Condominium Ass'n v. IKO Chicago, Inc.
, 183 Ill. 2d 66, 74-75, 697 N.E.2d 727, 731-32 (1998).  Accordingly, the trial court acted within its discretion in allowing the nonarbitrable issues to proceed. 

Because we find that the trial court acted within its discretion and did not violate the doctrine of 
res judicata
 when entering its order, we need not address the other issues presented to this court.

The order of the circuit court of Madison County is hereby affirmed.

Affirmed. 

HOPKINS and WELCH, JJ., concur.

                                      NO. 5-01-0885

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

RUTH REED, DAN KEATING, )  Appeal from the

DENNIS DeSPAIN, )  Circuit Court of

TERRY DeSPAIN, and )  Madison County.

CHARLES MANSFIELD SMITH III, )

)

     Plaintiffs-Appellees, )

)

)  No. 98-LM-652

)

DOCTOR'S ASSOCIATES, INC., )

FREDERICK DeLUCA, and )

PETER H. BUCK, )  Honorable

)  Clarence W. Harrison II,

     Defendants-Appellants. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: June 27, 2002

___________________________________________________________________________________

Justices
: Honorable Richard P. Goldenhersh, J.

Honorable Terrence J. Hopkins, J., and

Honorable Thomas M. Welch, J.,

Concur

___________________________________________________________________________________

Attorneys
 Kurt E. Reitz, Heath H. Hooks, Thompson Coburn, LLP, 525 West

for
 Main Street, P.O. Box 750, Belleville, IL 62222-0750

Appellants
 

___________________________________________________________________________________

Attorney
 David M. Duree, David M. Duree & Associates, P.C., 312 South Lincoln Avenue,

for
 O'Fallon, IL 62269

Appellees
 

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 06/27/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.