BUNGE CORPORATION, Plaintiff-Appellee, *v.* MARION WILLIAMS *et al.*, Defendants-Appellants.

Fifth District   No. 76-135

Opinion filed January 18, 1977.

360

R. Corydon Finch, of Anna, for appellants.

James H. Smith, of Hale & Smith, of Shawneetown (Linda Wolff, of counsel), for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendants Marion Williams, Donald Farris and Gene Powless appeal from orders of the Circuit Court of Alexander County that they proceed

with arbitration in accordance with provisions in three separate written contracts with plaintiff-appellee Bunge Corporation. The three cases, which are identical for all relevant intents and purposes, have been consolidated on appeal.

In July 1972, Bunge Corporation, which operates a grain elevator at Cairo, entered into soybean purchase contracts with defendants, all of whom are farmers in Alexander County. Defendants failed to deliver the soybeans and refused to pay Bunge the damages it sought for breach of contract. Bunge then instituted arbitration proceedings. Defendants refused to arbitrate, whereupon Bunge instituted the instant actions to compel arbitration under section 2(a) of the Uniform Arbitration Act, as amended (Ill. Rev. Stat. 1973, ch. 10, par. 102(a)). After a hearing, the court made the statutorily required determination that the parties had entered into binding agreements to arbitrate, and ordered the defendants to take the steps necessary to proceed with arbitration.

Defendants have raised a number of issues here,[1] but the dispositive question is, simply stated, whether there were in fact binding agreements to arbitrate between Bunge Corporation and the defendants. We agree with the court below that there were, and therefore affirm.

The relevant portions of the governing statute provide that:

"(a) On application of a party showing an agreement described in Section 1 [a written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate,

---

[1] "I. The first issue, raised on the evidentiary hearing, and presented for review, is whether the arbitration clause attempted to be added by Plaintiff Bunge Corporation to the parties' prior oral agreements, by placing self-actuating language in its packet of corporate forms, is enforceable under either the common law of contract or Section 2—207 of the Uniform Commercial Code.

II. The second issue ° ° ° is whether the attempt by Plaintiff Bunge Corporation through subtle use of a misleadingly-labeled packet of corporate forms disguising the hidden, additional provision for arbitration, for the purpose of binding Defendants to arbitration, to which they had not, in fact, assented, is void on grounds of fraud and unconscionability.

III. The third issue ° ° ° is whether Plaintiff Bunge Corporation may invoke equity jurisdiction to compel arbitration upon entering Court without clean hands, in attempting to enforce the additional terms, including arbitration and indefinite-extension-of-delivery, interfaced within their corporate packet of forms.

IV. The fourth issue ° ° ° is whether Plaintiff Bunge Corporation's disregard of its obligations under Paragraph 2 of its 'CONDITIONS AND TERMS', when Defendants reported their inability to deliver and offered to buy-out, is inconsistent with its now attempting to impose upon Defendants an obligation to arbitrate pursuant to the same Paragraph 2, and Plaintiff Bunge Iorporation is equitably estopped so to do.

V. The fifth issue is whether the National Grain and Feed Association before which Plaintiff is attempting to compel arbitration has jurisdiction to arbitrate any dispute between Plaintiff and Defendants since Defendants have not consented."

the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

* * *

(e) An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown." Ill. Rev. Stat 1973, ch. 10, par. 102(a) and (e).

■■ The statutory language could hardly be any clearer. As the Appellate Court for the Second District wrote in *School District No. 46 v. Del Bianco*, 68 Ill. App. 2d 145, 215 N.E.2d 25 (2d Dist. 1966), it is a "simple formula":

" * * * The sole issue under the Act on the preliminary hearings to compel or stay arbitration, is whether there is an agreement to arbitrate. If so, the court should order arbitration; if not, arbitration should be refused. * * *

* * *

* * * [T]he basic intent of the Act is to discourage litigation and foster the voluntary resolution of disputes in a forum created, controlled and administered by the agreement to arbitrate. * * *

The Uniform Act contemplates that arbitrators will be men who understand the terminology, practices, customs and usages of the trade, business or profession involved in the dispute—men, who can bring knowledge, expertise and understanding to the solution of the controversy. It encourages the self adjustment of minor disputes, subject to court supervision, with due recognition of the right to present material evidence, to cross examine witnesses, to have the aid of counsel, and to all procedural safeguards of an orderly hearing, including notice. It vests in the arbitrators power to subpoena witnesses and records, administer oaths, and to permit the taking of evidence depositions in a proper case. Ill. Rev. Stats. 1963, c. 10, pars. 105, 106 and 107. It was designed to meet the dynamic commercialism of today. * * *

When the plaintiff and defendant executed the contract in question, containing the aforesaid arbitration clause, the Uniform Act was in force in Illinois, and it was deemed a part of the contract the same as though expressly incorporated therein. Schiro v. W.E. Gould & Co., 18 Ill. 2d 538, 544, 165 N.E.2d 286 (1960). The parties were then irrevocably committed to arbitrate 'all questions in dispute under this agreement.' (Ill. Rev. Stats. 1963, c. 10, par. 101)" 68 Ill. App. 2d 145, 156-57, 215 N.E.2d 25, 31.

The contracts out of which the instant disputes arose each provided in plain English that the buyer and the sellers agreed *"that all disputes and*

*controversies between them with respect to this contract shall be arbitrated*" according to the rules and regulations of the National Grain and Feed Association. (Emphasis added.) This is clearly not a case such as *Flood v. Country Mutual Insurance Co.*, 41 Ill. 2d 91, 242 N.E.2d 149 (1968), where there was an unresolved question for the court as to what issues were subject to arbitration, requiring a preliminary interpretation by the court of the parties' arbitration agreement. (*Cf. Borg, Inc. v. Morris Middle School District No. 54*, 3 Ill. App. 3d 913, 278 N.E.2d 818 (3d Dist. 1972).) Thus the trial court properly saw the judicial function in these cases as limited to ·a summary determination of the question whether there were agreements to arbitrate. Under the statute, the court was not to consider the merits of the underlying disputes, and it did not, nor will we. (See Historical and Practice Notes, Ill. Ann. Stat., ch. 10, par. 102 (Smith-Hurd 1973).) If, after ·arbitration, the defendants find fault with the award of the arbitrators, they may then, under the Act, apply to vacate the award on the grounds stated in section 12, seek modification or correction under section 13, or appeal, as in any civil case, under section 18. (Ill. Rev. Stat. 1973, ch. 10, pars. 112, 113 and 118.)

Defendants argue that they did not consent to arbitration because Bunge's agent did not call their attention to the arbitration provisions on the reverse of the contracts which they signed. They claim that they never read the provisions, that they had never even heard of arbitration, and that they did not intend by signing the contracts to agree to arbitration. They vehemently maintain that the design of the contracts was fraudulent, and that the provisions for arbitration were unconscionable within the meaning of section 2—302 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—302). They conclude that the National Grain and Feed Association has no jurisdiction to proceed with arbitration of the disputes because of their lack of consent.

■■ Section 1 of the Uniform Arbitration Act provides that arbitration provisions in written contracts such as those involved here are "valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract." (Ill. Rev. Stat. 1973, ch. 10, par. 101.) Section 2—302(a) of the Uniform Commercial Code permits a court in its discretion, upon finding as a matter of law that any clause of a contract was unconscionable at the time it was made, either to "refuse to enforce the contract, or * * * enforce the remainder of the contract without the unconscionable clause, or * * * so limit the application of any unconscionable clause as to avoid any unconscionable result." Ill. Rev. Stat. 1973, ch. 26, par. 2—302(a).

The form of contract executed by each defendant in the transactions at issue, a sample of which is included in the record on appeal, is a "snap-out" form. The contract packet contains four sheets separated by carbon

paper. The bottom sheet, which is visibly different from the three sheets above it, is designed to serve both as a permanent record of deliveries made against the contract and as an envelope for related papers. The first three sheets, variously colored, are identical tear-off copies of the contract, with printing on both sides. Approximately one-quarter inch from the signature line on the front of the contract on which each defendant placed his signature, in large bold-faced capital letters, appears the following notice: "THE TERMS APPEARING ON THE BACK HEREOF ARE A PART OF THIS CONTRACT." The forms are attached at the top, but not at the bottom. All that is required to read the term on the back is that one lift the sheet.

■■ ■ We have carefully examined the contracts and the facts surrounding their execution, and cannot find anything that could reasonably be characterized as fraudulent or unconscionable in either the design of the forms or the conduct of plaintiff's agents. Nor is there anything "unconscionable" by nature in an arbitration clause in a contract as defendants seem to suggest. We note that each defendant had been a party to a contract to sell grain to Bunge on at least one prior occasion, and that those contracts had been made on identical forms containing identical arbitration provisions. Defendants were experienced farmers, who annually farmed from 800 to 2,000 acres.[2] They had ample opportunity to read the contracts and to know their every term. Their protests that they did not read the arbitration provisions are to no avail. As the court said in *Vargas v. Esquire*, 166 F.2d 651, 654-55 (7th Cir. 1948) (applying Illinois law):

> "It is a rule universally recognized that a written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs it. And in the absence of fraud, which must be proved by clear and convincing evidence [citation], a man in possession of all his faculties, who signs a contract, cannot relieve himself from the obligations of the contract by saying he did not read it when he signed it, or did not know or understand what it contained. [Citation.] To be sure, if his signature is secured by some fraudulent trick or device as to the context of the contract, which prevents him from reading the agreement, he may by proper action avoid the contract. [Citation.] But the contract cannot be avoided by proof that one of the parties, if he was sound

---

[2] Although we need not reach the question here, we have no doubt that defendants could be held to be "merchants" under the Uniform Commercial Code. See *Sierens v. Clausen*, 60 Ill. 2d 585, 328 N.E.2d 559 (1975); *Campbell v. Yokel*, 20 Ill. App. 3d 702, 313 N.E.2d 628 (5th Dist. 1974). See also Comment, *The Farmer in the Sales Article of the U.C.C.: "Merchant" or "Tiller of the Soil"?* 1976 So. Ill. U.L.J. 237.

in mind and able to read, did not know the terms of the agreement. One must observe what he has reasonable opportunity for knowing; the law requires men, in their dealings with each other, to exercise proper vigilance and give their attention to those particulars which may be supposed to be within reach of their observation and judgment and not to close their eyes to the means of information which are accessible to them. A person is presumed to know those things which reasonable diligence on his part would bring to his attention.

\* \* \*

It is a well settled rule of law that when a party to a contract is able to read and has the opportunity to do so, he cannot thereafter be heard to say he was ignorant of its terms and conditions. [Citation.]"

■■ The court below was correct in concluding that these agreements to arbitrate were valid and enforceable, that the arbitration provisions were not unconscionable, and that defendants had irrevocably consented to submit the disputes in question to arbitration. For the foregoing reasons, the judgments of the Circuit Court of Alexander County are affirmed.

Affirmed.

CARTER, P. J., and JONES, J., concur.