BILLY J. FARRIS, d/b/a Bill's Union 76, Plaintiff-Appellee, *v.* HERBERT C. HEDGEPETH *et al.*, Defendants-Appellants.

Second District   No. 77-151

Opinion filed April 11, 1978.

Joel R. Nathan, of Daniels, Hancock & Faris, of Elmhurst, for appellants.

Kenneth Moy, of Elmhurst, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

We review an interlocutory appeal by the defendant Herbert C. Hedgepeth. (Ill. Rev. Stat. 1975, ch. 110A, par. 307(a). See also *Bohn Aluminum & Brass Co. v. Barker*, 55 Ill. 2d 177, 180-81 (1973).) The order appealed from denied a stay of judicial proceedings and refused defendant's application to submit the matter to arbitration.

The dispute arose over the terms of a partnership agreement entered into by the plaintiff, Billy J. Farris, and the defendant, Hedgepeth, on August 1, 1973, to operate a Union 76 Service Station in Elmhurst. The agreement contained the provision that "any dispute arising out of or in connection with [the partnership agreement] shall be settled by arbitration in accordance with the rules of the American Arbitration Association." The defendant, by letter, sought to terminate the agreement.

The plaintiff responded with a five-count complaint. A substantial portion of the dispute involves count II of the complaint which in substance alleges that a second gas station in Elmhurst known as Herb's & Bill's Texaco, had been acquired by the partnership; and that the defendant in violation of a fiduciary duty to the plaintiff was in the process of negotiating with Texaco, Inc., the lessor, for the purchase of the Texaco Station. The plaintiff sought to enjoin the defendant and Texaco from any further negotiations and to void any agreements between defendant and Texaco. In the alternative, the plaintiff prayed that if the defendant is allowed to acquire the Texaco Station a constructive trust be imposed on the station for the benefit of the partnership.[1] Subsequently the defendant sought to compel arbitration.

---

[1] In the remaining counts the plaintiff sought a court order to inspect partnership books and records; to enjoin cancellation of the Union Oil 76 Station lease or in the alternative for an accounting; for conveyance of partnership assets upon payment for defendant's interest; and for either the appointment of a receiver to manage the partnership assets or an injunction against defendant from conducting the partnership affairs.

On December 14, 1976, the circuit court granted the defendant's motion to stay proceedings and directed the plaintiff and defendant to submit their disputes to arbitration. On January 24, 1977, a hearing was held on plaintiff's motion to vacate the December 14 order. At this time the Union 76 Station had been closed, the city of Elmhurst had condemned the property, and the defendant was operating the Texaco Station by himself.

The trial judge vacated his order of December 14 after a hearing. He explained that while the Union 76 Station was clearly partnership property so that any disputes arising out of its operation were subject to arbitration, the status of the Texaco Station was not clear. He noted that the defendant had asserted that he alone owned the Texaco Station or in the alternative that if it is owned by both partners the partnership is separate and distinct from the partnership described in the written agreement of August 1, 1973, which related only to the Union 76 Station, and was therefore not covered by the arbitration clause in that agreement. The judge while expressing a preference for having the parties voluntarily agree to submit all disputes to arbitration took the position that once the equity court took a part of the case it would "decide the whole problem."

On February 17, 1977, the defendant asked the court to reconsider its order and to reinstate the initial order compelling arbitration of all five counts of the plaintiff's complaint. In connection with this motion the judge stated that he intended to conduct further hearings to determine if the Texaco Station was in fact owned by the partnership created by the August 1, 1973, agreement. He announced that if he determined that the arbitration clause of the August 1 agreement was applicable he would compel arbitration as to the whole cause. It appears that no further evidentiary hearings were held because of the plaintiff's interlocutory appeal. While the notice of appeal states that it is taken from the March 1 order denying the petition for reconsideration, the defendant in his brief states that the appeal is from an order "vacating a prior order compelling plaintiff-appellee to proceed to arbitration," which would be the January 24 order.

■■ We conclude that the January 24 order was erroneous. The "second thoughts" which the judge expressed on March 1 when he refused to vacate the prior order on defendant's motion to stay the entire proceedings, however, in our view provide the proper resolution of the case.

Section 2(a) of the Uniform Arbitration Act (Ill. Rev. Stat. 1975, ch. 10, par. 102(a)) provides:

> "(a) On application of a party showing an [arbitration] agreement * * *, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the

opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied."

■■ The issue of whether a dispute is or is not within the scope of an arbitration clause, "should be determined at the earliest possible moment and should be controlled by judicial guidelines." (*Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.*, 109 Ill. App. 2d 224, 229 (1969).) It has been stated that "parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication." *Flood v. Country Mutual Insurance Co.*, 41 Ill. 2d 91, 94 (1968).

■■ In this case the written partnership agreement of August 1, 1973, provides for arbitration of any dispute arising in connection with the agreement and this would clearly bring the dispute as to the Union 76 Station within the clause. A preliminary hearing to stay a judicial proceeding and compel arbitration should concern itself solely with the issue of whether or not there is an agreement to arbitrate the dispute in question. (*Bunge Corp. v. Williams*, 45 Ill. App. 3d 359, 362 (1977); *School District No. 46 v. Del Bianco*, 68 Ill. App. 2d 145, 156 (1966).) However, whether the dispute arising from the operation of the Texaco Station can fairly be said to be within the scope of the arbitration clause depends on the resolution of the factual issue whether the Texaco Station had been acquired by the parties with the understanding that the August 1 partnership agreement would control. The trial judge was prepared to pursue this question in an evidentiary hearing.

■■ Section 2(d) of the Uniform Arbitration Act (Ill. Rev. Stat. 1975, ch. 10, par. 102(d)) provides as to a stay that:

"(d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this Section or, if the issue is severable, the stay may be with respect thereto only."

This provision suggests that if one issue of a dispute is subject to arbitration and severable the court in its discretion can stay the entire proceeding, pending arbitration, or only that aspect of the action that is subject to arbitration.

The Illinois courts have apparently never adjudicated the question of how a trial court should exercise its discretion in staying a proceeding, part of which is subject to arbitration and part of which is not.[2] The courts

---

[2] See, however, *Paschen Contractors, Inc. v. Calnan Co.*, 13 Ill. App. 3d 485, 490-91 (1973), where the court ordered a stay of arbitration as to one item of a six item complaint but refused such a stay as to the other five items, without discussion.

in several other jurisdictions, however, have treated this aspect of judicial discretion to permit broad latitude to the trial court on this issue. See *Collins Radio Co. v. Ex-Cell-O Corp.*, 467 F.2d 995, 1000 (8th Cir. 1972); *Harmon Electrical Construction Co. v. Consolidated Engineering Co.*, 347 F. Supp. 392, 397-98 (D. Del. 1972); *Black v. Econo-Car International, Inc.*, 404 F. Supp. 600, 602 (D. Mass. 1975); *Mid-Atlantic Construction Corp. v. Guido*, 30 App. Div. 2d 232, 291 N.Y.S.2d 501, 507 (1968).

■■ The Arbitration Act contemplates a "substantive disposition by the court" of a party's motion to stay proceedings and compel arbitration "*prior* to the issuance of the stay order." (Emphasis in original.) (*Liberty Mutual Insurance Co. v. Duray*, 5 Ill. App. 3d 187, 190 (1972).) The trial court here was about to conduct an evidentiary hearing into the nature of the Texaco operation and its relationship to the written partnership agreement of August 1, 1973, when it was cut short by the defendant's interlocutory appeal. In the posture of the case at it now stands it must be remanded.

If the evidentiary hearing reveals that the Texaco Station is a partnership asset subject to the arbitration clause found in the written partnership agreement of August 1, 1973, then the trial court must stay all judicial proceedings and order the entire matter submitted to arbitration. (Ill. Rev. Stat. 1975, ch. 10, par. 102(a).) If the court finds that the Texaco Station was owned, at all relevant times, by only the defendant, then the court would order only disputes relating to the Union 76 Station submitted to arbitration and stay only the judicial proceedings arising out of that operation. If, however, the trial court finds that the plaintiff and defendant as partners own the Texaco Station but that the Texaco partnership is not governed by the written agreement of August 1, 1973, the court will be required to order arbitration to resolve the disputes arising out of the operation of the Union 76 Station but cannot order such arbitration to settle the controversy arising out of the Texaco Station. Under this last set of facts, the arbitrable and nonarbitrable disputes, although severable, would obviously be interrelated in terms of a complete accounting between both parties. In such a situation the court in its discretion could either order all judicial proceedings stayed, pending arbitration, or simply stay the judicial proceedings arising out of the operation of the Union 76 Station. Ill. Rev. Stat. 1975, ch. 10, par. 102(d). See also, *e.g., Collins Radio Co. v. Ex-Cell-O Corp.*, 467 F.2d 995, 1000 (8th Cir. 1972).

The cause is therefore reversed and remanded with directions to proceed in conformity with the views we have expressed.

Reversed and remanded with directions.

RECHENMACHER and BOYLE, JJ., concur.