DONALDSON, LUFKIN & JENRETTE FUTURES, INC., Plaintiff-Appellant, v. EDWIN C. BARR *et al.*, Defendants-Appellees.

First District (4th Division)   No. 86—1090

Opinion filed January 8, 1987.

JIGANTI, J., dissenting.

Jenner & Block, of Chicago (Eugene R. Wedoff, of counsel), for appellant.

( Lloyd Kadish and Therese M. Obringer, both of Chicago, for appellee Edwin C. Barr.

Kirkland & Ellis, of Chicago, for appellee Board of Trade of the City of Chicago.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Donaldson, Lufkin & Jenrette Futures, Inc. (Donaldson), appeals from an order of the circuit court which denied its application for a stay of arbitration proceedings. (Ill. Rev. Stat. 1985, ch.10, par. 102(b).) Donaldson applied for the stay on the ground that it had not agreed to arbitrate the compensation claims which defendant-appellee and former employee Edwin C. Barr (Barr) had raised in his arbitration demand to the Chicago Board of Trade. The trial court denied Donaldson's application, finding that "in cases arising under the Uniform Arbitration Act *** if it is unclear whether [a claim] is arbitrable, the matter would be directed to arbitration to allow the arbitrator to determine his own jurisdiction."

On appeal Donaldson raises the following issues: (1) whether the trial court erred in allowing the arbitrator to determine his own jurisdiction; and (2) whether the trial court erred in not finding that the scope of the parties' arbitration agreement did not cover Barr's claims.

BACKGROUND

Plaintiff Donaldson originally operated as a commodity futures broker and had several offices, which included one in Chicago. The Chicago office was also the office which directed the trading activities on the Chicago Board of Trade.

In 1983, Donaldson hired the defendant Barr to locate in the Chicago office and take the post of a senior vice-president for the company. Barr's duties included supervising managers and account executives, as well as managing Donaldson's trading activities on five commodity exchanges, including the Chicago Board of Trade.

In addition to providing Barr with membership in the Chicago Board of Trade, Donaldson also prepared several documents which described Barr's employment duties and which also provided a compensation analysis for these duties. Such compensation included a straight salary of $90,000 per year, the use of a car, a top-line percentage of a maximum of 5% of the gross generated from any new business for the first year, and a bottom-line percentage of 5% from

related offices. In addition, and notable in this regard, was the inclusion of 15% of the bottom-line profit of the Chicago office activities.

In July 1985, Donaldson sold its operation to another firm and ceased activity as a broker on all exchanges, including the Chicago Board of Trade. Barr also ceased working for Donaldson under ambiguous circumstances at approximately the same time that Donaldson sold its commodity business.

In October 1985, Barr's attorney sent Donaldson a letter in which Barr demanded more than $500,000 in additional employment compensation; $419,000 of this amount allegedly arose as 15% of the operating income which was generated by his Chicago office from 1983 through 1985. Other claims included the recruitment bonus of 5% of the gross first-year commissions produced by new offices or employees Barr brought to Donaldson, as well as reimbursement of travel and entertainment expenses.

When Donaldson did not comply with Barr's demand for payment, Barr sought arbitration before the Chicago Board of Trade, pursuant to that organization's rules. The board then set a date for the arbitration hearing in December 1985.

In response, on December 12, 1985, Donaldson filed in the circuit court of Cook County a verified application for a stay of the arbitration demanded by Barr, as well as a request for a temporary restraining order to prevent arbitration from proceeding until the court ruled on this application. Donaldson also verified complaint at law, seeking a declaratory judgment that Donaldson had discharged all its obligations to Barr, as well as seeking relief from Barr on a breach of a rental car agreement. Meanwhile, in the proceedings on Donaldson's application for stay of arbitration, the circuit court granted the Chicago Board of Trade leave to intervene as a party defendant.

In its petition, Donaldson conceded that board Rule 600.00 mandated arbitration of any dispute between members of the Board, "which arises out of the Exchange business of such parties." (Chicago Board of Trade Rule 600.00.) However, Donaldson maintained that the disputes as to compensation which Barr raised were not within the scope of the Chicago Board of Trade rule and that there was no other applicable arbitration clause in the original agreement. It was Barr's contention in the trial court that the dispute between Donaldson and Barr was not one which arose out of a mere employment contract; instead, it involved Chicago Board of Trade business and therefore fell within the scope of Rule 600.00. In addition, both the Board of Trade as defendant-intervenor and Barr argued that the question of arbitrability in unclear cases should be delegated to the arbitrator

to determine as a matter of law.

The trial court held that: (1) in Illinois the arbitrator must determine his own jurisdiction as a matter of law; and (2) Barr's claims arguably fell within the scope of Rule 600.00 and therefore would be delegated to arbitration. Donaldson then filed a notice of interlocutory appeal from the denial of its application for a stay.

OPINION

I

The first issue which this court must address is whether a court should initially determine the arbitrability of Barr's claims. The starting point for this inquiry is the relevant Illinois statutory provision which reads, in pertinent part:

"(b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. That issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party." (Ill. Rev. Stat. 1985, ch. 10, par. 102(b).)

Curiously, there has been only one Illinois Supreme Court decision which has even peripherally discussed this particular problem. (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149.) In that decision, the court construed the scope of an arbitration clause in a standard automobile insurance policy. However, the actual issue was whether the arbitration clause included disputes over coverage as well as issues of liability. Although the appellate court had originally held that the arbitrator should determine his own jurisdiction, the supreme court did not reach this issue.

Among the Illinois appellate courts, however, the current majority view is that the court should initially decide whether an agreement to arbitrate exists. For example, in *J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 456 N.E.2d 889, the primary issue in the context of a construction contract was whether there was an agreement to arbitrate a specific dispute. In that decision, the appellate court expressly held that a court should always be the forum in which to determine the initial narrow question of arbitrability. Although the court decided this case under section 2(a) and not section 2(b), it is still relevant because both provisions have as a common denominator the requirement that the court make a preliminary decision. On the other hand, in *Van C. Argiris & Co. v. Pain/Wetzel & Associates, Inc.* (1978), 63 Ill. App. 3d 993, 380 N.E.2d 825,

the court implicitly found that the scope of arbitration bylaws covered a brokerage dispute, without initially considering the basis of their authority to do so.

Similarly, other recent decisions have held that the responsibility of determining arbitrability belongs to the courts. See *Board of Trustees of Community Colleges v. Cook County College Teachers Union* (1985), 139 Ill. App. 3d 617, 487 N.E.2d 956; *Monmouth Public Schools v. Pullen* (1985), 141 Ill. App. 3d 60, 489 N.E.2d 1100; *Consolidated Broadcasting Corp. v. American Arbitration Association* (1983), 115 Ill. App. 3d 577, 450 N.E.2d 1252; *Board of Education v. Williams* (1983), 118 Ill. App. 3d 256, 454 N.E.2d 773; *Lester Witte & Co. v. Lundy* (1981), 98 Ill. App. 3d 1100, 425 N.E.2d 1; see also *Iser Electric Co. v. Fossier Builders, Ltd.* (1980), 84 Ill. App. 3d 161, 405 N.E.2d 439; *Farris v. Hedgepeth* (1978), 58 Ill. App. 3d 1040, 374 N.E.2d 1086.

On the other hand, several Illinois decisions have held that when an agreement to arbitrate is unclear, then the arbitrator should make the preliminary determination as to his own jurisdiction. The leading authority in this line of cases is *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 215 N.E.2d 25. That case arose in the context of a construction contract, which incorporated the arbitration procedure of the American Institute of Architects. The case also arose within a few years after Illinois adopted the Uniform Arbitration Act, so that the court went into detailed analysis as to its statutory interpretation of section 2. This court concluded that the arbitrator should initially determine his own jurisdiction when the existence of an agreement to arbitrate is unclear. It reasoned that any other result would undermine the parties' original agreement that the meaning of the arbitration clause be determined by the arbitrator. 68 Ill. App. 2d 145, 155, 215 N.E.2d 25, 30.

Two subsequent Illinois cases have approved the *Del Bianco* rationale, although neither actually referred the jurisdictional question to the arbitrator because of the apparent clearness of the agreement. See *Ozdeger v. Altay* (1978), 66 Ill. App. 3d 629, 384 N.E.2d 82; *Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045, 328 N.E.2d 903; but see *Board of Education v. Williams* (1983), 118 Ill. App. 3d 256, 454 N.E.2d 773.

In addition to State law discussed *supra*, it should also be noted that the Chicago Board of Trade briefly raised the possibility of Federal preemption. Section 2 of the Federal Arbitration Act indicates that any contract which evidences a transaction involving (interstate) commerce is enforceable, except "upon such grounds as exist at law

or in equity for the revocation of any contract." (9 U.S.C. sec. 2 (1982). See also 9 U.S.C. sec. 3 (stay of proceedings where issue therein is referable to arbitration), and sec. 4 (failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration).) In its brief the Chicago Board of Trade relies on an Illinois decision involving possible preemption by the Federal Securities Exchange Act of State law remedies. However, where the remedy sought is a stay of arbitration, a survey of case law under the Federal Arbitration Act is more appropriate.

As a starting point, the United States Supreme Court has recently held that a California statutory provision was preempted by section 2 of the Federal Arbitration Act even though an action to stay arbitration was brought in the State court. (*Southland Corp. v. Keating* (1984), 465 U.S. 1, 79 L. Ed. 2d 1, 104 S. Ct. 852.) In so holding, the court emphasized that in section 2 Congress had declared a national policy favoring arbitration. (See also *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.* (1967) 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801.) Furthermore, in one Seventh Circuit decision, the court recognized that Federal law could preempt the Illinois act in the context of commercial construction contracts. (*Gault v. Libbey-Owens-Ford Glass Co.* (7th Cir. 1967), 376 F.2d 711.) That case implicitly assumed that under Federal law courts initially determine jurisdiction, although this authority is limited to ascertaining where an agreement to arbitrate actually exists. Other Seventh Circuit cases have also implicitly supported the view that the judiciary makes this initial determination. This initial assumption then only leaves the resolution of whether specific disputes fall within a particular arbitration agreement. See *Halcon International, Inc. v. Monsanto Australia Ltd.* (7th Cir. 1971), 446 F.2d 156; *Commonwealth Edison Co. v. Gulf Oil Corp.* (7th Cir. 1976), 541 F.2d 1263; but see *Butler Products Co. v. Unistrut Corp.* (7th Cir. 1966), 367 F.2d 733.

Based on the above, it appears clear that the trial court should make the initial decision of arbitrability as a matter of law. As Donaldson noted in its appellate brief, the plain language of the Illinois statute supports this result. In addition, the most recent cases in the collective-bargaining context, as well as the commercial context, support this view. We do not believe that our conclusion is correct merely because it is the predominant approach. Beyond that we note that in this instance, the majority view does support the plain meaning of the statute. As to possible Federal preemption, our research lends support to the conclusion that courts should make the initial determination as to their own jurisdiction.

## II

Our next inquiry involves the merits of the case irrespective of whether the arbitrator or the court makes the initial decision: whether Barr's specific claims fall within the ambit of the Board of Exchange Rule 600.00. That rule states in pertinent part that any agreement between board members is arbitrable if it arises out of Exchange business. While noting that in Illinois there are no decisions which construe this rule, it is nevertheless informative to observe how courts have interpreted other arbitration clauses. Such a search reveals that courts have recognized many varieties of generic (broad) arbitration clauses, and one large group of cases involves construction contracts. *Ozdeger v. Altay* (1978), 66 Ill. App. 3d 629, 384 N.E.2d 82, involved a construction contract which in turn contained a broad agreement to arbitrate all matters "arising out of or relating to the agreement." The court in this instance found that this clause would cover a subsequent oral agreement as well as the original contract. It reasoned that the written contract contained a "generic" arbitration clause, which in turn was nonspecific in its designation of arbitrable disputes. Therefore, it appears that the trial court must examine both the wording of the particular clause and the terms of the contract in which it is included to determine the respective rights and responsibilities of the parties.

Similarly, in *Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045, 331 N.E.2d 835, the dispute also arose in the context of a construction contract. This court first looked to the generic-specific arbitration provision dichotomy. It then found that the arbitration clause "All claims, disputes, and other matters in question arising out of or relating to this Contract" was even broader than the generic provision "all disputes arising in connection with this contract." Therefore, it reasoned that certain disputes, even if not explicitly covered in the original contract, were within the scope of the arbitration clause. 28 Ill. App. 3d 1045, 1056-65, 331 N.E.2d 835.

*J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 456 N.E.2d 920, continued the line of cases which arose in the context of a construction contract. The applicable provision in the *Montalbano* contract stated that all claims, disputes, and other matters in question arising out of or relating to this agreement or breach were to be decided according to the Northern Illinois Home Builders Association bylaws. The court found that this clause was sufficiently broad to encompass the defendant's claims because broad wording of the clause revealed the parties' intention to resolve all types of disagreements pertaining to home construction.

That court also reasoned that such a broad clause should encompass disputes which were not foreseeable at the time of contracting. See also *J. F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, 426 N.E.2d 257.

Illinois courts have construed arbitration clauses broadly in other types of commercial agreements as well. In particular, the Illinois Supreme Court decision in *Notaro v. Nor-Evan Corp.* (1983), 98 Ill. 2d 268, 456 N.E.2d 93 involved a purchase agreement. In that instance, a broad arbitration provision allowed the court to give as large a construction to the arbitration clause as the words of the instrument and intentions of the parties would warrant. See also *Security Mutual Casualty Co. v. Harbor Insurance Co.* (1979), 77 Ill. 2d. 446, 397 N.E.2d 839; *State Farm Mutual Automobile Insurance Co. v. Hanover Development Corp.* (1979), 73 Ill. App. 3d 326, 391 N.E.2d 562; *Farris v. Hedgepeth* (1978), 58 Ill. App. 3d 1040, 374 N.E.2d 1086; *Bunge Corp. v. Williams* (1977), 45 Ill. App. 3d 359, 359 N.E.2d 844.

As noted *supra*, the above decisions generally arose in the context of commercial contracts among contractors, subcontractors, architects, insurance companies, and partnerships. A case which is more analogous to the instant dispute because it arose in the context of an employer-employee disagreement is *Van C. Argiris & Co. v. Pain/Wetzel & Associates, Inc.* (1978), 63 Ill. App. 3d 993, 380 N.E.2d 825. That case involved the application of a real estate association's arbitration bylaws in the context of a dispute over the employee's claim for money due and owing. The original agreement incorporated the real estate association's bylaws, and both the employer and employee were members of this organization at the time of the dispute. The relevant bylaw read in pertinent part: " 'The Arbitration committee shall have jurisdiction over any controversy between members related to a commission claimed or charged by or paid to such members or to any other matters arising out of their business as brokers or agents.' " (63 Ill. App. 3d 993, 996, 380 N.E.2d 825, 828.) The court then held that this dispute between the defendant and the plaintiff was subject to arbitration. It should be noted, however, that the language of this arbitration clause is very broad in that it covers any controversy relating to commissions or business as brokers. But see *Board of Education v. Williams* (1983), 118 Ill. App. 3d 256, 454 N.E.2d 773.

However, other courts have held that despite the broad language, a dispute will not be covered by an arbitration clause unless the disputed matter was expressly mentioned in the original written agreement. This result has occurred even when the arbitration clause indicates that arbitration is mandated for "any dispute arising out of or related to the contract or agreement." See *Croom v. City of De Kalb* (1979),

71 Ill. App. 3d 370, 389 N.E.2d 647; *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224, 248 N.E.2d 289; *cf. Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149.

■ The record in this case indicates that some of Barr's claims, although in the context of an employment dispute, definitely fell within the scope of Exchange business. Based on the above case law, the arbitration provision of Rule 600.00 of the Exchange bylaws falls somewhere between what has previously been characterized as a broad arbitration clause and a limited arbitration clause. This means that it is limited in the sense that it only applies to claims stemming from Exchange business, rather than the commodities business or any business between members generally. However, it is more generic in two respects: (1) it does not, by its terms, limit itself only to trading activities on the Exchange; and (2) it contains the phrase "arising out of," which courts have often construed broadly in previous Illinois decisions. Therefore, we must conclude that the business between members must stem from business which is Exchange-related, but does not necessarily have to specifically be trading on the Exchange. We also note that the dispute lies somewhere between a commercial dispute and a collective-bargaining dispute. Although Barr was an employee, he was originally an executive, and his claims included the right to profits, as well as salary.

■ With this preliminary determination of scope aside, we now turn to which of Barr's claims could fall within these parameters. The original demand letter from Barr's attorney to Donaldson claimed that Donaldson owed severance pay, reimbursement for business expenses, bottom-line profits, and top-line profits for new business that Barr generated in several offices. However, by far the largest claim was for $419,000 in bottom-line profits from Donaldson's Chicago office. As noted *supra* pursuant to Donaldson's original employment letter to Barr, Barr was entitled to 15% of the bottom-line profit from the Chicago office, which, in turn was or could have been generated from Chicago Board of Trade business on the Exchange. Similarly, Barr claimed his 5% share of top-line profits in new business he brought in from all his offices. Presumably, this claim could also encompass new income generated from his Chicago office which in turn was the result of business on the Chicago Board of Trade floor.

Based on the record before us and applicable case law we conclude that we should remand these two claims to the trial court for an evidentiary hearing on whether the alleged profits can be directly traced to activities on or with the Chicago Board of Trade. Accordingly, we

reverse and hold that as a matter of law, the trial court should initially determine its own jurisdiction under section 2(b) of the Illinois Uniform Arbitration Act. Furthermore, we remand for an evidentiary hearing to determine whether the alleged profits of the Chicago office operations were generated by trading on the Exchange.

Reversed and remanded.

JOHNSON, J., concurs.

JUSTICE JIGANTI, dissenting:

It is clear that under sections 2 and 12(a)(5) of the Uniform Arbitration Act the ultimate determination of arbitrability is to be resolved by the court. However, there remains in Illinois the unresolved issue as to the point in the proceedings at which this ultimate determination should be made. The majority opinion adopts the position of Donaldson that the trial court, seemingly in all cases, should make the initial arbitrability determination. Based upon the provisions of the Uniform Arbitration Act itself and the public policy considerations that underlie arbitration in this State, I respectfully dissent.

Section 2(b) of the Uniform Arbitration Act provides:

"On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. That issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration." Ill. Rev. Stat. 1985, ch. 10, par. 102(b).

Section 12(a)(5) of the Uniform Arbitration Act also deals with the question of whether a particular alleged factual setting is within the agreement of the parties to be arbitrated. That section provides:

"There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by the circuit court is not ground for vacating or refusing to confirm the award." (Ill. Rev. Stat. 1985, ch. 10, par. 112(a)(5).)

Section 12, however, applies only when no prior judicial determination under section 2 has been made. Thus, reading section 2 in conjunction with section 12 it necessarily follows that there are certain instances in which the trial court does not initially determine arbitrability, but

rather makes the determination subsequently upon review of an arbitrator's decision. A contrary interpretation requiring the trial court, rather than the arbitrator, to make all initial determinations under section 2 would in effect read section 12 out of the statute. It is an elementary principle of statutory construction, however, that the legislature intended meaning and effect to each provision enacted.

The certain factual instances in which the trial court should make the arbitrability decision either initially or upon review were artfully set forth in *Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045, 331 N.E.2d 835. There the court found that there are two situations in which the trial court should initially determine arbitrability; namely, where the matter is clearly within the scope of the arbitration provision or, alternatively, where the matter is clearly not within the scope of the arbitration provision. As for those cases falling within these two ends of the spectrum, the court stated:

"If the parties present the issue of the arbitrability of a given matter in a section 2 proceeding and it appears to the court that a reasonable doubt exists as to whether the matter is or is not within the scope of the arbitration provision in the contract, then the court should refer the issue of arbitrability to the arbitrator for initial decision, subject to ultimate *judicial* determination at the instance of either party in a section 12 proceeding *** ." *Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045, 1051, 331 N.E. 2d 835.

Although this position in *Mayfair* has not been followed in other Illinois Appellate Court decisions (*Board of Trustees of Community Colleges v. Cook County College Teachers Union* (1985), 139 Ill. App. 3d 617, 487 N.E.2d 956; *Board of Education v. Williams* (1983), 118 Ill. App. 3d 256, 454 N.E.2d 773; *Consolidated Broadcasting Corp. v. American Arbitration Association* (1983), 115 Ill. App. 3d 577, 450 N.E.2d 1252), I believe this procedure is not only the most practical method of handling arbitration but more importantly is the approach that was within the contemplation of the drafters of the Uniform Arbitration Act. In a case such as that before us, where the merits of the case are entwined with the determination of arbitrability, the court is faced with the cumbersome task of trying the entire matter before a decision as to arbitrability can be reached. This is neither desirable nor does it comport with the public policy that favors arbitration. (*Schutt v. Allstate Insurance Co.* (1985), 135 Ill. App. 3d 136, 478 N.E.2d 644.) Moreover, as the court noted in *Mayfair*, referring the matter initially to the arbitrator enables the court in a subsequent

608

section 12 proceeding to utilize the arbitrator's expertise in the court's ultimate judicial determination of the issue. *Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045, 1051, 331 N.E.2d 835.

Consequently, after considering sections 2 and 12, in light of the policies favoring arbitration and judicial economy, I believe the decision of the trial court should be affirmed.