GELDERMANN, INCORPORATED, Plaintiff-Appellee, v. WILLIAM MUL-LINS *et al.*, Defendants-Appellants.

First District (4th Division)   No. 88—0044

Opinion filed June 2, 1988.

Rivkin, Radler, Dunne & Bayh, of Chicago (Dale R. Crider, Cindy F. Wile, and Neal H. Weinfield, of counsel), for appellants.

Coffield, Ungaretti, Harris & Slavin and Gloria Matthews, of Geldermann, Inc., both of Chicago (Gregory A. Friedman and David S. Mandel, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Geldermann, Inc., brought an action in the circuit court of Cook County against defendants, William Mullins, David Mueller, and Merrill Lynch, Pierce, Fenner and Smith, Inc. Plaintiff alleged, *inter alia,* that defendants misappropriated its personal property. Defendants filed a claim with the Chicago Board of Trade (CBOT) arbitration committee. Defendants also filed a motion in the trial court to stay the litigation and compel arbitration. The trial court denied defendants' motion and ordered defendants to answer the complaint.

Defendants now bring this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)). (*Notaro v. Nor-Evan Corp.* (1983), 98 Ill. 2d 268, 456 N.E.2d 93.) Defendants contend that the trial court erred in refusing to stay the litigation and compel arbitration.

We reverse the order of the trial court and remand with directions.

BACKGROUND

The record shows that defendant Mullins is a futures commission merchant. During the late 1970's and early 1980's, he developed Farm Marketing Program I, a computer program to aid farmers in hedging against future changes in the prices of their crops. The program generates specific trades for farmers in the commodity futures markets. The program bases its conclusions on the recommendations of certain non–Exchange-related publications that provide advice on future market trends. Mullins developed the program while working on his family farm. Mullins paid for its development and used the program for his own benefit.

Plaintiff is a commodities broker and a member of the CBOT. Mullins agreed to become an independent contractor for plaintiff in October 1983. Mullins worked in the grain division, farm marketing group, of plaintiff's Chicago office. Mullins continued to improve the program during his employment. Sometime in 1984, Mullins modified the program to increase its capacities (Farm Marketing Program II). In 1985, plaintiff hired a consulting firm to further improve the program. Plaintiff paid the consulting firm approximately $25,000 for the improved program (Farm Marketing Program III), but Mullins also paid part of the cost.

Plaintiff alleged that on or about June 19, 1987, Mullins directed defendant Mueller to obtain from one of its employees a copy of the program's source code, which is its blueprint. Mueller told the employee that he needed the blueprint to improve the program for plaintiff's customers. Mullins then hired an independent computer software programmer, without plaintiff's knowledge, to modify the program (Farm Marketing Program IV). Mullins, Mueller, the independent programmer and one of plaintiff's employees worked together, using plaintiff's offices and equipment without authorization. After they designed Farm Marketing Program IV, Mullins and Mueller left plaintiff in August 1987 to work for defendant Merrill Lynch, Pierce, Fenner & Smith.

Plaintiff further alleged that upon leaving its employ, and also without its knowledge or consent, Mullins and Mueller took Farm Marketing Programs III and IV and other confidential customer information. Additionally, the information was not a matter of public knowledge. It was subject to company policies and procedures intended to keep such information secret.

In its multicount complaint, plaintiff pled breach of fiduciary duty, misappropriation of trade secrets, conversion, fraud, tortious interference with prospective business advantage, and breach of contract. Plaintiff sought both compensatory and punitive damages, and injunctive relief.

Defendants did not answer the complaint. Instead, they filed a claim with the CBOT arbitration committee. They alleged that Mullins had a proprietary interest in Farm Marketing Program III. Defendants further alleged that Mullins and the others did not modify or take Farm Marketing Program III. Rather, Farm Marketing Program IV was a completely new program that differed significantly from Farm Marketing Program III. Further, plaintiff still used and benefitted from all of the existing versions of the program. Defendants sought: (1) a declaration that Mullins has at least as equal a proprie-

tary interest in Farm Marketing Program III as plaintiff; (2) a declaration that Mullins has the sole proprietary interest in Farm Marketing Program IV; and (3) an award of commissions that Mullins allegedly earned while in plaintiff's employ.

Defendants soon thereafter filed in the trial court a motion to stay the litigation and compel arbitration. Defendants argued that the controversy was arbitrable under CBOT Rule 600.00. At the close of a hearing held on December 2, 1987, the trial court denied defendants' motion to stay the litigation and compel arbitration. The trial court's order also directed defendants to answer the complaint. It was undisputed that an arbitration provision existed, which was CBOT Rule 600.00. It was further undisputed, however, that the controversy rose from business that was only 90% Exchange-related. Consequently, the court ruled that the dispute was not arbitrable because: (1) 10% of the trades generated by the program were executed on exchanges other than the CBOT and (2) those trades were nonseverable from the controversy.

We note that the record contains defendants' motion to stay discovery pending appeal, plaintiff's motion to compel defendants to withdraw the arbitration claim, and defendants' response to that motion. The record is silent as to how the trial court ruled on these issues. It is clear, however, that defendants appeal from the trial court's December 2, 1987, order denying their motion to stay the litigation and compel arbitration.

OPINION

■ Defendants filed their motion to stay the litigation and compel arbitration pursuant to section 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 102). That section empowers a trial court, upon application of a party, to stay or compel arbitration and to stay court action pending arbitration. Further, the court is not to consider the merits of the arbitrable issue itself. Rather, the court must summarily determine whether an agreement to arbitrate exists. (Ill. Rev. Stat. 1985, ch. 10, par. 102.) Under the Act, the sole issue at the hearing to compel or stay arbitration is whether an agreement to arbitrate the dispute in question exists. If so, the court should order arbitration; if not, the court should refuse arbitration. *Bunge Corp. v. Williams* (1977), 45 Ill. App. 3d 359, 362, 359 N.E.2d 844, 845, quoting *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 156, 215 N.E.2d 25, 31.

■ Additionally, we note plaintiff's contention that this court may not reverse the trial court absent an abuse of discretion. We disagree.

The trial court did not hear evidence or make findings of fact. Rather, the trial court based its order on its interpretation of CBOT Rule 600.00. The construction, interpretation, or legal effect of a contract are questions of law for the court to resolve. This court may determine questions of law independent of the trial court's judgment. *Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 319-20, 369 N.E.2d 525, 528.

It is undisputed that an agreement to arbitrate exists. CBOT Rule 600.00 provides as follows:

> "600.00 Arbitration of Member Controversies—Any controversy between parties who are members and which *arises out of the Exchange business of such parties* shall, at the request of any such party, be submitted to arbitration in accordance with regulations prescribed by the Board. Every member, by becoming such, agrees to arbitrate all such disputes with other members in accordance with this Rule and the regulations prescribed by the Board pursuant to this Rule, and further agrees and obligates himself to abide by and perform any awards made thereunder." (Emphasis added.)

The parties, however, disagree on whether their controversy falls within the scope of CBOT Rule 600.00. Plaintiff contends that the issues raised in its complaint did not arise out of Exchange business.

■ A court should interpret arbitration provisions in the same manner and according to the same rules as all other contracts. The parties are bound to submit only those issues that they clearly agreed to resolve through the arbitration process. A court should not extend an arbitration agreement by construction or implication. (*J&K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 669, 456 N.E.2d 889, 894, citing *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149.) Additionally, the court and not the arbitrator should determine whether the issues in dispute are within the scope of the arbitration agreement. 119 Ill. App. 3d at 670, 456 N.E.2d at 894, cited in *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1987), 151 Ill. App. 3d 597, 600, 503 N.E.2d 786, 789.

In the *Donaldson* case, this court was required to interpret CBOT Rule 600.00. We construed the rule as follows:

> "[T]he arbitration provision of Rule 600.00 of the Exchange by-laws falls somewhere between what has previously been characterized as a broad arbitration clause and a limited arbitration clause. This means that it is limited in the sense that it only applies to claims stemming from Exchange business, rather

than the commodities business or any business between members generally. However, it is more generic in two respects: (1) it does not, by its terms, limit itself only to trading activities on the Exchange; and (2) it contains the phrase 'arising out of,' which courts have often construed broadly in previous Illinois decisions. Therefore, we must conclude that the business between members must stem from business which is Exchange-related, but does not necessarily have to specifically be trading on the Exchange." *Donaldson,* 151 Ill. App. 3d at 605, 503 N.E.2d at 792.

In the case at bar, it is undisputed that the great majority of trades that the farm marketing programs generated, approximately 90%, were executed on the CBOT. The trial court, however, noted that approximately 10% of the trades generated by the programs were not executed on the CBOT, but rather on other exchanges. In other words, plaintiff based its claims on business that was only approximately 90% Exchange-related. The trial court also noted that plaintiff's claims arose from business that was both Exchange-related and non–Exchange-related. This made the non–Exchange-related business inseparable from the Exchange-related business for resolving the dispute. The trial court reasoned that since plaintiff did not base its claims on totally Exchange-related business, the controversy did not fall squarely within CBOT Rule 600.00. Since the controversy did not fall squarely within the arbitration requirement, the trial court denied defendants' motion to compel arbitration.

■ This reasoning was error. The object of arbitration is to foster the final disposition of disputes in an easier, faster, and more economical manner than by litigation. As a result, courts favor arbitration. (*First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 846, 467 N.E.2d 932, 934.) Courts will not ignore this policy of favoring arbitration simply because multiple claims are present. *Kostakos v. KSN Joint Venture No. 1* (1986), 142 Ill. App. 3d 533, 538, 491 N.E.2d 1322, 1326.

The general rule in Illinois is that courts should enforce arbitration agreements despite the existence of claims that create the potential for duplicative proceedings. Moreover, where the issues and relationships are sufficiently interrelated and the result of arbitration may be to eliminate the need for court proceedings, submission of the dispute to arbitration meets the goals of judicial economy and of resolving disputes outside of the judicial forum. *Diersen v. Joe Keim Builders, Inc.* (1987), 153 Ill. App. 3d 373, 377, 505 N.E.2d 1325, 1327-28 (and cases cited therein).

■ Applying these principles to the instant case, we conclude that the trial court should have granted defendants' motion to stay the litigation and compel arbitration. The great majority of the business on which plaintiff based its claims fell within the arbitration agreement. The fact that approximately 10% of the business on which plaintiff based its claims fell outside of the arbitration agreement should not defeat public policy favoring arbitration.

■ Citing *J. F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, 820, 426 N.E.2d 257, 261, plaintiff argues that judicial economy and the avoidance of inconsistent results may permit the joinder and litigation of arbitrable with nonarbitrable claims. This proposition is error. Illinois courts have repeatedly criticized and distinguished *Vicik.* (*Diersen v. Joe Keim Builders, Inc.* (1987), 153 Ill. App. 3d 373, 377, 505 N.E.2d 1325, 1327-28 (and cases cited therein); *First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 848-49, 467 N.E.2d 932, 935-36, relying on *Kelso-Burnett Co. v. Zeus Development Corp.* (1982), 107 Ill. App. 3d 34, 42-43, 437 N.E.2d 26, 32.) We choose not to follow *Vicik.*

For the foregoing reasons, the order of the circuit court of Cook County is reversed and the cause remanded with directions that the trial court grant defendants' motion to stay the litigation and compel arbitration of the claims raised by the parties.

Reversed and remanded with directions.

JIGANTI, P.J., and JOHNSON, J., concur.