After the opinion in this case was released on March 16, 1990, I became aware of a law review article entitledJudicial Misuses of the Word Fraud to Defeat the Parol EvidenceRule and the Statute of Frauds (With Some Cheers and Jeers forthe Ohio Supreme Court), 23 Akron L.Rev. 1 (1989), that was written by Professor Morris G. Shanker and was received at the Alabama Supreme Court and State Law Library on March 15, 1990. Professor Shanker, in this article, expressed the views held by this individual Justice (see note 1 in the opinion) when he wrote the following:
 "To sum up: The Parol Evidence Rule will not exclude evidence of fraud which induced the written contract. But, a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite to the contrary, attempts to prove such contradictory assertions [are] exactly what the Parol Evidence Rule was designed to prohibit.
 "Just why so many of our judges . . . fail to accept this reality is puzzling. . . . [I]f a lawyer introduces any evidence under the banner of fraud, the presiding judge's likely mind set is to receive it with open arms. But, in so doing, the judges are reacting; not thinking clearly or precisely about what fraud in our legal system is all about. And, by such unthinking reactions, our judges are undercutting the whole purpose for the Parol Evidence Rule and, more importantly, the societal need to uphold the integrity and certainty of written contracts.
"D. Proper Fraudulent Inducement Claims
 "Well, then, what are the misrepresentations amounting to fraudulent inducement to enter into a written contract which may be received in evidence despite the Parol Evidence Rule? Actually, there are several such categories. To understand them, one must remember the basic [premise] on which the Parol Evidence Rule is grounded. *Page 1049 
 "That basic premise is that one is supposed to read and understand a writing before he signs it. . . . [T]he point was particularly well expressed in the Illinois decision, Bunge Corp. v. Williams, [45 Ill. App.3d 359, 365, 4 Ill.Dec. 11, 14-15, 359 N.E.2d 844, 847-48 (1948)]:
 " 'it [is] the duty of every contracting party to learn and know its contents before he signs [a writing] . . . But the contract cannot be avoided by proof that one of the parties, if he was sound in mind and able to read, did not know the terms of the agreement. One must observe what he has reasonable opportunity for knowing; the law requires men, in their dealings with each other, to exercise proper vigilance and give their attention to those particulars which may be supposed to be within reach of their observation and judgment and not to close their eyes to the means of information which are accessible to them. A person is presumed to know those things which reasonable diligence on his part would bring to his attention.'
"1. Fiduciary Relationships
 "As a careful reading of the above statement indicates, there are occasional situations where one is excused from the usual duty of reading and/or understanding a writing. One such situation is where the writing was prepared by the other party who is in a fiduciary relationship to the signer; e.g., an attorney, a close family member, etc. Where a fiduciary prepares a writing for his beneficiary's signature, then the beneficiary is entitled, by reason of this special relationship, to rely upon the fiduciary's statements of what the writing contains. Thus, evidence that the fiduciary gained an advantage by misrepresenting to his beneficiary the terms of the writing is admissible notwithstanding the Parol Evidence Rule. . . .
"2. Fraud in the Factum
 "Another class of cases where persons are excused from reading and understanding a writing involve those who are unable to do so, and, therefore, must rely upon the other party's representations of what the writing contains — the so-called fraud in the factum cases. These include situations involving blind persons, illiterate persons, foreign speaking persons, etc. Where there exists this total incapacity to read and understand a writing, then the normal duty to do so is excused and a fraud case is made out by showing that the other party misrepresented the contents of the writing.
"3. Meaning of Words Known Only By One Party
 "There is a third situation which is somewhat comparable in principle to the fraud in the factum case. This group of cases arises where the meaning and understanding of particular words contained in the writing are solely within the knowledge of one party. Thus, the other party necessarily must rely upon that party's statement of what those written words mean.
 "A good example of this situation can be found in the Third Circuit decision of Associated Hardware Supply Co. v. Big Wheel Distributing Co.[, 355 F.2d 114 (3d Cir. 1966)]. . . .
"4. Extrinsic Fraud
 "Finally, there are other misrepresentations which induce a written contract, but which do not contradict the terms contained in the written contract. Or, as Justice Holmes in the Marion Production Credit Association [v. Cochran, 40 Ohio St.3d 265, 274, 533 N.E.2d 325, 334 (1988), decision] put it, where the misrepresentations are 'premised upon matters which are wholly extrinsic to the writing.'
 "An example of this kind of fraud would be a seller who falsely represents to a property owner that he is a heating engineer and then offers to check out the efficiency of the owner's furnace. Having done so, the Seller then falsely states the furnace is not working well and needs replacement. Thereupon, he offers to sell a new furnace to replace the old one. The property owner agrees and a written sales contract for a new furnace is executed. When the owner, the buyer, discovers the falsity of the seller's *Page 1050 
representations, then he has a proper case for fraudulent inducement of the written sales contract, evidence of which may be introduced despite the Parol Evidence Rule. But, note, the buyer in this example is not attacking or contradicting the terms of the written sales contract for the new furnace itself — something which he cannot do under the Parol Evidence Rule. Instead, the buyer is showing false representations extrinsic to the writing that induced him to enter into the written sales contract. The Parol Evidence Rule will not bar evidence of this kind."
23 Akron L.Rev. at 7-10 (emphasis original).